# CASES

## ARGUED AND DETERMINED

IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS AND THE CIRCUIT AND DISTRICT COURTS.

## FLICKINGER v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. December 5, 1906.)

### No. 1,556.

1. BANKS AND BANKING—OFFENSES BY OFFICERS OF NATIONAL BANKS—INDICTMENT FOR MISAPPLICATION OF FUNDS.

In an indictment under Rev. St. § 5209 [U. S. Comp. St. 1901, p. 3497], charging an officer of a national bank with a willful misapplication of its funds with intent to injure and defraud the association, it is not necessary to aver that the acts set out were done without authority from the directors.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Banks and Banking, § 973.]

2. SAME—ACTS CONSTITUTING OFFENSE.

The discounting by the president of a national bank with the funds of the bank of commercial paper known by him to be worthless or fictitious, for the benefit of an insolvent corporation of which he is an officer, and with intent to injure and defraud the bank, is a willful misapplication of its funds, constituting a criminal offense under Rev. St. § 5209 [U. S. Comp. St. 1901, p. 3497.]

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Banks and Banking, § 964.]

3. CRIMINAL LAW—VERDICT—REPUGNANCY—SEVERAL COUNTS.

Where an indictment under Rev. St. § 5209 [U. S. Comp. St. 1901, p. 3497], charging an officer of a national bank with willful misapplication of its funds, contains counts each based on the discounting of a separate instrument, and another count based on the discounting of all of such instruments, a verdict is not repugnant and inconsistent because it finds the defendant guilty on the latter count and not guilty on the former.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, §§ 2100, 2101.]

In Error to the District Court of the United States for the Eastern Division of the Northern District of Ohio.

T. E. Powell, for plaintiff in error.

John J. Sullivan, for the United States.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

150 F.—1

RICHARDS, Circuit Judge. The plaintiff in error, Edward Flickinger, was convicted of aiding and abetting Otho L. Hays, the president· of the Galion National Bank, of Galion, Ohio, in certain violations of section 5209 of the Revised Statutes [U. S. Comp. St. 1901, p. 3497]. The indictment contained 52 counts, charging Hays as principal, and Flickinger as aider and abettor, with willfully misapplying the moneys, funds, and credits of the bank by certain methods described, and with unlawfully issuing certain certificates of deposit and bills of exchange without authority from the directors, all with intent to injure and defraud the bank. They were both convicted on six counts, Nos. 38, 40, 41, 42, 43, and 50, each charging a willful misapplication of the moneys, funds, and credits of the bank, with intent to injure and defraud it; the first five by discounting and passing to the credit of the Flickinger Wheel Company, at that time insolvent, certain worthless, fictitious, and fraudulent drafts, drawn by the Flickinger Wheel Company on the Vehicle Wheel Club, and accepted by the latter, and the last by discounting and passing to the credit of the Flickinger Wheel Company certain worthless·and unsecured accommodation notes, given it by the Galion Wagon & Gear Company, both companies being then wholly insolvent. A motion for a new trial being overruled, the defendants were each ordered to be imprisoned for 7½ years in the penitentiary on each of the six counts; the sentence to be concurrent and not cumulative. The defendant Hays is now undergoing the punishment imposed by this sentence; the defendant Flickinger alone having prosecuted error.

The rule is well established that where a judgment of guilty is based upon several counts and the sentence is concurrent, as in this case, the judgment will be sustained if any, one of the counts supporting it is found good. Claassen v. U. S., 142 U. S. 140, 12 Sup. Ct. 169,. 35 L. Ed. 966. It is not our purpose, however, to select some one of these six counts, and base out affirmance upon it alone, for we think them all good. The court below overruled a demurrer to the indictment and each count thereof. It is contended it erred because the counts under consideration do not describe a willful misapplication of the funds of the bank within the inhibition of the statute, and, more particularly, do not allege that the defendant Hays did the acts charged against him without authority .from the directors. The five counts charging a willful misapplication through the discount of the Vehicle Wheel Club drafts allege that the defendant Hays was, at the time the transaction took place, the president of the Galion National Bank, having general superintendence of its affairs, and that he willfully misapplied the moneys, funds, and credits of the bank, then under his control and custody as president, with intent to convert the same to the use and benefit of the Flickinger Wheel Company, and with intent to injure and defraud the bank, by discounting three drafts, one for $9,000, one for .$7,500, and one for $7,500, aggregating in amount $24,000, which bear the acceptance of the Vehicle Wheel Club, by Edward Flickinger, president (describing them and giving a copy of one, the others not being obtainable)—

"Which said drafts were then and there, when so discounted, worthless, unsecured, false, and fictitious drafts and obligations, and had been drawn by

the said the Flickinger Wheel Company upon the said Vehicle Club, at a time when the said Vehicle Wheel Club was not indebted in the sum of $24,000, nor in any other sum approximating $24,000, to the said the Flickinger Wheel Company, nor was there any consideration of any kind or value moving from the said the Flickinger Wheel Company to the said Vehicle Wheel Club, nor to any other person, for the said acceptance of the said drafts, but the same were false. fraudulent, and unauthorized; the said acceptance being indorsed upon said drafts by the said E. Flickinger, otherwise known as Edward Flickinger, who was then and there also the president of the said the Flickinger Wheel Company; the drawing and accepting of said drafts being done, and being caused to be done, by the said E. Flickinger, otherwise known as Edward Flickinger, and the said Otho L. Hays, president as aforesaid, acting together, the said Otho L. Hays being then and there the treasurer of the said the Flickinger Wheel Company, and both the making and accepting of said drafts being but a sham and a device to create a worthless and fictitious obligation, all of which he, the said Otho L. Hays, president as aforesaid, then and there well knew; the said the Flickinger Wheel Company being then and there wholly insolvent, as he, the said Otho L. Hays, president as aforesaid, then and there well knew."

The indictment then charges that the drafts were discounted by Hays by deducting the amount of interest and discount, and causing the Flickinger Wheel Company to be credited on the books with the balance of $23,469.28, which amount was afterwards withdrawn by the Flickinger Wheel Company and converted to its use. The count closes by charging that Flickinger, with intent to injure and defraud the bank, knowingly and unlawfully aided and abetted Hays in this misapplication. The other counts charging willful misapplication through the discount of other Vehicle Wheel Club drafts are similar in form.

The fiftieth count charges that Hays, being then the president of the bank and having general superintendence of its affairs, did willfully misapply its moneys, funds, and credits, then under his control and custody as president, with intent to convert the same to the use and benefit of the Flickinger Wheel company, and with the further intent to injure and defraud the bank, by receiving and discounting 12 certain notes, aggregating $15,000, which are set out in detail—

"Which said notes were then and there, when so discounted, worthless, unsecured notes and obligations, the said the Flickinger Wheel Company and the said the Galion Wagon & Gear Company both being then and there wholly insolvent and entitled to no credit in said banking association, as he, the said Otho L. Hays, president as aforesaid, then and there well knew."

It is then charged that these notes, aggregating $15,000, were discounted, and the balance, $14,419.50, was passed to the credit of the Flickinger Wheel Company, which withdrew the same from the bank and thus obtained the full use thereof, no part of it ever having been paid to the bank. The count closes by charging that Flickinger, with intent to injure and defraud the bank, knowingly and unlawfully aided and abetted Hays in this misapplication.

Section 5209 of the Revised Statutes provides that:

"Every president * * * of any association, who * * * willfully misapplies any of the moneys, funds or credits of the association, * * * with intent * * * to injure or defraud the association, * * * shall be guilty," etc.

The statute does not make it necessary, in order to constitute an offense, for the president to make the willful misapplication "without

authority from the directors," although there is that special provision with respect to the unlawful issue of any of the notes of the association, or of any certificates of deposit or bill of exchange, etc. In passing upon the demurrer, the court below said:

"Objection is made that there is no averment that Hays discounted this paper without the knowledge and consent of the board of directors. I do not think this averment necessary, and it would not be less criminal done with the knowledge and consent of the board of directors, if the defendants and the board of directors did it under the circumstances which the indictment avers existed in connection with the action of the defendants. It appears, from the averments of these counts, that the defendant Hays misapplied money and funds of the bank by discounting these notes."

We concur in this view. The averments of these counts show, in each instance, a willful misapplication of the funds of the bank, for an unlawful purpose, with intent to injure and defraud the bank. The transaction in each case is described in detail, and the averments, covering every element of the crime, are full and clear. There could be no proper presumption that the directors, in the ordinary course of business, would consent to the discount by the president of worthless and fictitious paper, with intent to injure and defraud the bank, and therefore no necessity to insert in the indictment an averment to negative such authority. If, under any circumstances, the authority of the directors could validate such conduct on the part of the president, then, in that event, which we see no reason to anticipate, the rule laid down by this court in the McKnight Case would apply. It would be a matter of defense. McKnight v. U. S., 115 Fed. 972, 986, 54 C. C. A. 358.

But, leaving the indictment, it is argued quite strenuously, first, that the verdict of guilty on the counts mentioned is not supported by the evidence; second, that the court erred in its charge to the jury; third, that the verdict of guilty on these counts cannot be sustained, because the jury brought in a verdict of not guilty on other counts covering the same transactions, so that the verdict is repugnant and inconsistent; and, finally, that no offense was consummated, because it appears that when the amounts obtained by the discount of the drafts and notes mentioned were passed to the credit of the Flickinger Wheel Company, that company was overdrawn, so that it obtained no money from the bank, the only result being a change in the form of its obligations to the bank.

It was not necessary, in order to support the verdict, to recount the testimony. The record is long and the transactions many. In brief, the Galion National Bank was organized in 1886, and had a capital stock of $60,000. Otho L. Hays owned over one-third of its capital stock, was its president, and controlled its affairs. It closed its doors on February 15, 1904. An examination of its condition showed that its total loans and discounts at that time were $412,000. Of this amount about $337,000 had been discounted by corporations in which Edward Flickinger was the controlling spirit. The leading company was the Flickinger Wheel Company, of Galion, Ohio, a concern engaged in the manufacture and sale of vehicle wheels, of which Edward Flickinger was president and Otho L. Hays (the president of the Galion National Bank) was treasurer. Another was the Galion

Wagon & Gear Company which, prior to June 28, 1902, when its plant burned down, had been engaged in the manufacture of vehicle bodies at Galion, Ohio. Edward Flickinger was president of this company and Otho L. Hays its treasurer. There also figures in this case what was known as the Vehicle Wheel Club, of which Edward Flickinger was president. This was a voluntary organization, composed of some 15 or 20 manufacturers of vehicle wheels, formed for the purpose of regulating prices by controlling the output.

The proof shows that the Flickinger Wheel Company did its principal banking business with the Galion National Bank from 1892 until the failure of the latter. It did a large business on insufficient capital, and was constantly in need of help from the bank. Its account was frequently heavily overdrawn. It not only discounted bona fide commercial paper, but large amounts of accommodation paper drawn to its order by the Galion Wagon & Gear Company and other corporations. Starting in 1892 with a capital stock of $60,000, afterwards increased to $100,000, it ended its business career in April, 1903, without having paid a dividend, with a total indebtedness of $637,775.34. There was proof tending to show that in the summer of 1903 the Vehicle Wheel Club agreed to and did purchase the machinery of the Flickinger Wheel Company for $66,000. There was no agreement about the manufactured stock on hand, although there was talk by individual members, speaking each for himself, of purchasing this stock in whole or in part. The drafts covered by the five counts mentioned were prepared by the cashier of the bank, acting under direction of Hays. The acceptance by the Vehicle Wheel Club was placed upon them by the use of a rubber stamp prepared by the cashier for that purpose; a blank being left for the signature of Flickinger as president. After the drafts had been prepared, Hays took them away and brought them back to the bank properly filled out, when they were discounted. This use of the Vehicle Wheel Club for "kiting" purposes was unknown to its members and wholly unauthorized. The drafts were, therefore, fictitious and fraudulent, and their discount by the president of the bank, with intent to injure and defraud the bank, was a willful misapplication of the funds under his control.

There was a general exception by the defendants "to the entire charge of the court as given relative to the Vehicle Wheel Club drafts, and each portion thereof." It would take many pages to set forth all the court said about these drafts. There is no need to do so. The claims of both sides were fairly presented, and the decision of the questions of fact involved was left to the jury. We think the evidence amply supports the conclusion which the jury must have reached in returning its verdict of guilty.

With respect to the discount of the notes aggregating $15,000, drawn by the Galion Wagon & Gear Company, and discounted on February 2, 1904, less than two weeks before the bank failed, the testimony showed that this was purely accommodation paper. At that time there was a large amount of similar paper outstanding in the bank. The Galion Wagon & Gear Company was not engaged in active business, its plant having burned down, and the proof tended to show it was insolvent. Hays, the president of the bank and the treasurer of this

company, as well as of the Flickinger Wheel Company, stated on his direct examination that these notes were renewals, but was forced to admit later that they were not. There is nothing to show they were given for any bona fide indebtedness. It is clear they were used simply to secure more money from the bank, and at a time when (as the jury might well have found from the evidence) both companies were wholly insolvent.

The claim is made that, when the proceeds of the drafts and notes covered by these counts were passed to the credit of the Flickinger Wheel Company, that concern was overdrawn, so that no additional funds were secured from the bank. This is a mistake. On October 1, 1903, when $23,496.28, the proceeds of the discount of the Vehicle Wheel Club drafts covered by count 38 was passed to the credit of the Flickinger Wheel Company, that corporation had a balance of $12,077.13 in the bank. In addition to the discount mentioned, it was credited that day with deposits amounting to $4,998.50, making a total in the bank of $40,571.91. That day it checked out $19,644.13, leaving at the close of business to its credit $20,927.78. So it got the benefit that day of those discounts.

The other Vehicle Wheel Club drafts, covered by counts 40, 41, 42, and 43, along with two other Vehicle Wheel Club drafts, one for $6,000 and one for $5,000, were discounted and passed to the credit of the Flickinger Wheel Company on December 23, 1903. At the beginning of business on that day, the Flickinger Wheel Company was overdrawn $27,279.07. The proceeds of the discount of these six drafts amounted to $32,767.24. There were two deposits on that day, one for $1,000 and one for $3,175.61. The total deposits, therefore, amounted to $36,942.85. There was checked out on that day, $36,014.16, leaving $928.69 to apply on the overdraft of $27,279.07, which reduced it to $26,350.38. It is apparent, therefore, that on that day the Flickinger Wheel Company received the full benefit of the discount of these drafts, and the bank was left with substantially the same overdraft as before.

At the beginning of business on February 2d, the date of the discount of the Galion Wagon & Gear Company notes, aggregating $15,000, the Flickinger Wheel Company was overdrawn $12,483.87. The proceeds of these notes amounted to $14,419.50, which left the company with a balance in bank of $1,935.63. Of this balance it checked out on February 2, $780.15, and the next day again overdrew; so that, on February 2d, while it did not get the benefit of all, it did of part, of the proceeds of the discount of these notes.

The conclusion we reach with respect to this contention is that it is not supported by the facts of record. We do not need to pass upon the question of law sought to be raised, namely, whether the offense of misapplication would be complete if the proceeds of the discounts were passed to the credit of the company, and never drawn out; the worthless paper being merely substituted for the equally worthless overdrafts.

The final claim is made that the verdict of the jury is repugnant and inconsistent, because count 45, on which the jury returned a verdict of not guilty, was based on the four drafts covered by counts 40, 41, 42, and

43, along with two others, and because counts 51 and 52, upon which there was a verdict of not guilty, covers two of the notes set forth in count 50 on which there was a verdict of guilty. An examination of the record shows that the forty-fifth count charges a misapplication of the proceeds of six Vehicle Wheel Club drafts. These six drafts were separately covered by counts 40, 41, 42, and 43, upon which there was a verdict of guilty, and by counts 39 and 44, upon which there was a verdict of not guilty. The jury very properly, therefore, found a verdict of not guilty upon the forty-fifth count. The fifty-first and fifty-second counts being based on two of the twelve notes covered by count 50, the jury quite correctly brought in a verdict of not guilty on them, since the verdict of guilty on count 50 covered all twelve notes. In doing this the jury followed the instructions of the court when it said:

"It will not be necessary for you to return verdicts of guilty both upon the counts based upon the separate instruments and the counts where all are joined in a single count."

We find nothing repugnant or inconsistent in the verdict.

Our attention is called in a general way to the refusal of the court to give the special requests presented by the defense, and to certain portions of the charge as given. The requests which were proper and pertinent were either given as requested or covered by the general charge, and counsel has not been able, in our opinion, to point out any portion of the charge excepted to at the time which was erroneous.

The judgment is affirmed.

NOTE.—The following are the opinion of Tayler, District Judge, on demurrer to the indictment, and the charge to the jury:

TAYLER, District Judge. The indictment in this case contains 52 counts. The defendants have filed a demurrer to all of the counts of the indictment, alleging different grounds, according to the character of each. All of the counts are based on section 5209 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 3497]. The first, second, and third counts charge the defendant Hays, president of the Galion National Bank, with unlawfully issuing and putting forth, as such officer, a certain certificate of deposit, without the authority of the board of directors, with intent to injure and defraud the bank, and charge the defendant Flickinger with aiding and abetting Hays in the same transaction. Counts 32, 33, 34, 35, and 36 are of the same character as 1, 2, and 3, except that bills of exchange, instead of certificates of deposit, were issued.

The claim is made by the defendants that the offense is not described sufficiently, and that the averments of the several counts do not constitute a crime; and especial stress is laid upon the fact that it nowhere appears in these counts how any misapplication of funds occurred, or that the bank lost any money by reason thereof. It is sufficient to say that the allegations are in the language of the statute, and that they describe the particular act which is claimed to be unlawful. The general averment that it was done with intent to injure and defraud the bank is sufficient to complete the criminal act.

The demurrer objects to counts 11 to 16, inclusive, and to counts 37 to 45, inclusive, which relate to the discount of notes and drafts by the defendants; the notes and drafts being unsecured, and the makers and indorsers of them known to be insolvent. Objection is made that there is no averment that Hays discounted this paper without the knowledge and consent of the board of directors. I do not think this averment necessary, and it would not be less criminal, done with the knowledge and consent of the board of directors, if the defendants and the board of directors did it under the circumstances which the indictment avers existed in connection with the action of the defendants.

It appears, from the averments of these counts, that the defendant Hays misapplied money and funds of the bank by discounting these notes. Counts 12, 13, 14, 15, 16, 46, 47, and 48 charge misappropriation by the discounting of worthless paper and placing the same to the credit of the Flickinger Wheel Company; but it is insisted that, because there is no charge that the money was withdrawn from the bank, the bank did not suffer, and no crime was committed. It may be that such an act is not criminal under section 5209, but I am constrained to believe the contrary. Such seems to be the effect of the decision of the court in Rieger v. United States, 107 Fed. 916, 47 C. C. A. 61, and reasons additional to those given by the court in that case occur to me why the criminal act is completed when a note known to be worthless is passed to the credit of a depositor. The fund is then subject to the order of the depositor, and it may or may not be withdrawn; but, until by some act of repentence on the part of the guilty official, or by some act of vigilance on the part of some other official, the credit is withdrawn, its amount remains as absolutely subject to the control of the depositor as if the credit was in all respects unimpeachable.

The objection to the remaining counts is covered by the objection made to some of the other counts—that there is no averment that the misapplication or misappropriation of the funds was done without the knowledge and consent of the association or its board of directors. On this point I have already indicated my opinion.

The demurrer is therefore overruled.

### Charge to Jury.

I feel that, as you have listened to the proceedings of the trial of this case thus far with the patience and intelligence which its importance requires, you will proceed now to the final work which you have to do in respect to it under the direction of an enlightened conscience and all the powers of mind which you possess; and in so doing I do not doubt at all but that you will arrive at a conclusion satisfactory to your judgment and to your conscience. There is no other tribunal or arbiter that you are called upon to satisfy. A conclusion which to yourself, honestly and intelligently considering the whole case, is satisfactory, is the only conclusion and the best conclusion which the law expects jurors to come to.

The indictment in this case, in 52 counts, charges that Otho L. Hays, while and as president of the Galion National Bank, of Galion, Ohio, committed certain offenses against the law of the United States, at Galion, in this division and district, between the 9th day of June, 1903, and the 13th day of February, 1904. These crimes, so charged are of varied character, and will be more fully described and commented upon as I proceed with this charge. In all of these counts, the defendant Edward Flickinger is charged with aiding and abetting Otho L. Hays in the commission of each of the offenses at the time and place stated.

Before proceeding to a more definite statement of these offenses, and of the rules by which you are to be controlled in a consideration of the facts, it will be advantageous to lay down a few general propositions which affect your determination of the questions submitted to you. You know, of course, gentlemen, that the law applicable to this case, determining the construction and effect to be put upon the facts, is given to you wholly by the court. What the facts are is to be determined by you. If it should appear, at any time during this charge, that the court seems to have an opinion as to what a fact is or what the facts are, you will understand that that apparent conclusion or state of mind of the court is not at all to weigh with you in determining what the facts are. In the federal court, the court has a right to his opinion, and he may, and sometimes does, express it, on the facts; but that does not at all exclude, nor must it interfere with, the province of the jury to determine for yourself what the facts really are.

As I have said, the defendant Otho L. Hays is charged with the commission of the several offenses, and the defendant Edward Flickinger is charged with aiding and abetting Hays in their commission. An "aider and abettor" is one who advises, counsels, procures, or encourages another to commit a crime, whether personally present or not at the time and place of the commission of

the offense; and the defendant Flickinger would be guilty under any count of this indictment if the jury found that Hays had committed the offense charged in the count and that Flickinger had advised, counseled, procured, or encouraged Hays to commit the crime. You will observe, from this definition of aiding and abetting, that the defendant Flickinger could not be convicted of aiding and abetting Hays, if Hays himself was not guilty of committing the crime in the commission of which it is charged that Flickinger aided and abetted; and, of course, it might be that Hays was guilty of committing one of the crimes charged in the indictment, and Flickinger not guilty of aiding and abetting him. The answer to both of these questions depends wholly upon the testimony in the case. In consequence of this rule of law, defining the relations between the principal and one who aids and abets him, it may be that the language of my charge will seem to be directed chiefly to the elements that constitute the commission of the crime by the principal. So that will not mislead you.

In considering the evidence and in your endeavor to arrive at a conclusion as to the guilt or innocence of the defendants, or either of them, you will constantly bear in mind that the mere fact that an indictment has been found against them is not accompanied by any presumption whatever that they are guilty. These defendants, like all defendants in criminal cases, are presumed to be innocent until the contrary appears by proof that satisfies the jury beyond a reasonable doubt that they are guilty. This presumption of innocence, continuing with the defendants until removed by such evidence, is one of the safeguards of our jurisprudence, and is a real, and not a fanciful, right. The defendants are entitled to its protection; and you will not permit any consideration, either of public interest or otherwise, to interfere with its application to this case.

I am asked by the defendants to charge, and I do charge: The defendants are charged in the indictment with misapplying the funds of the Galion National Bank, one as principal and the other as aider and abettor, with intent to injure and defraud the bank. The law presumes the defendants innocent of any intent to defraud or injure the bank, and the burden of proving such intent beyond a reasonable doubt is upon the government, and unless it has done so the defendants must be acquitted. A reasonable doubt is not a mere possible doubt, because everything relating to human affairs, and depending upon moral evidence, is open to some possible or imaginary doubt. It is that state of the case which, after full consideration of all the evidence, leaves the minds of the jurors in such a condition that they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge. Every person is presumed to be innocent until he is proved guilty. If, upon such proof, there is a reasonable doubt remaining, the defendant is entitled to the benefit of it by acquittal. It is not sufficient to establish a probability, though a strong one. that the fact charged is more likely to be true than otherwise; but the evidence must establish the truth of the fact to a reasonable and moral certainty, a certainty that convinces and directs the understanding and satisfies the reason and judgment of those who are bound to act conscientiously upon it. To put it briefly in another form, if the evidence produced in this case be of such a convincing character that you would be unhesitatingly governed by it in the more weighty and important matters relating to your own affairs, then you may be said to have no reasonable doubt respecting the guilt or innocence of the defendants, notwithstanding the uncertainty which attends all human evidence. If, after an impartial comparison, consistent with and pointing to the guilt of the defendants, you have an abiding conviction of the defendants' guilt —such a conviction as you would be willing to act upon in the more weighty and important matters relating to your own affairs—then I say to you, you would have no reasonable doubt of their guilt.

I am also asked by the defendants to charge, and I do charge, as follows: It matters not how clearly the circumstances point to guilt, still, if they are reasonably explainable on a theory which excludes guilt, then it cannot be said that the facts in the case are sufficient to satisfy the jury beyond a reasonable doubt of the defendants' guilt; in other words, all of the facts proved must be not only consistent with and point to the guilt of the defendants, but the facts must be inconsistent with their innocence.

I am asked by the defendants to charge, and I do charge you, as follows: If, after consideration of the whole case, any one of the jury should entertain a reasonable doubt of the guilt of the defendants, or either of them, it is the duty of such juror not to vote for a verdict of guilty as to such defendants or defendant. I give you that charge, with this additional injunction: That if, after a consideration of the whole case, fully, carefully, and honestly given, after comparison with his fellow jurors, with a view of arriving at an honest conclusion, still one of the jury should entertain a reasonable doubt of the guilt of the defendants, or either of them, it would then be the duty of such juror not to vote for a verdict of guilty.

It is proper at this point, and before we proceed to a detailed examination of the charges, and of the evidence offered by the government and the defendants, for me to say to you in a general way that evidence has been presented here of acts and declarations of both Hays and Flickinger, done and said in the absence of the other. I saw to you that, if it appears, by satisfactory proof, that a design was formed by both of these parties to co-operate, or to assist one another, in the doing of any of the illegal acts charged in the indictment, then evidence of any act done or declaration made by one of the defendants, in furtherance of the common design to do the illegal act, is competent evidence for you to consider against the other defendant. And it would follow that any act or declaration of either of the defendants after the completion of the illegal act, and not in furtherance of it, would not be competent against the other defendant. Thus, in this case, evidence has been introduced tending to prove that certain declarations were made by the defendant Flickinger a short time after the Galion National Bank had closed its doors. If such declarations were made, they cannot be considered by you as bearing upon the guilt or innocence of the defendant Hays, since they were made after the illegal act, if any there was, was done. You will apply this rule to any other acts or declarations of either of the parties to this indictment which you may find were not done or made in furtherance of the common design to do the illegal act complained of in the indictment.

Section 5209, Rev. St. [U. S. Comp. St. 1901, p. 3497], under which this indictment is drawn, provides as follows: "Every president, director, cashier, teller, clerk, or agent of any association, who embezzles, abstracts or willfully misapplies any of the moneys, funds or credits of the association; or who, without authority from the directors, issues or puts in circulation any of the notes of the association; or who, without such authority, issues or puts forth any certificate of deposit, draws any order or bill of exchange, makes any acceptance, assigns any note, bond, draft, bill of exchange, mortgage or decree; or who makes any false entry in any book, report, or statement of the association, with intent, in either case, to injure or defraud the association or any other company, body politic or corporate, or any individual person, or to deceive any officer of the association, or any agent appointed to examine the affairs of any such association; and every person who with like intent aids or abets any officer, clerk, or agent in any violation of this section, shall be deemed guilty of a misdemeanor, and shall be imprisoned not less than five years nor more than ten." It will be noted that several different kinds of crimes are defined by this section. The charges made in this indictment, we find upon examination, naturally classify themselves under two heads: First, those which charge the willful misapplication of the moneys, funds, and credits of the Galion National Bank; and, second, those which charge the issuing and putting forth of a certificate of deposit and certain bills of exchange without authority from the directors. Those two branches of the law are made the subject of this indictment: The misapplication of funds; and the issuance, without authority of the directors, of a certificate of deposit and certain drafts, called in the statutes "bills of exchange."

I call your attention to the fact that the acts declared criminal by the section which I read to you a moment ago, and upon which this indictment is based, become so when done with intent to injure or defraud the banking association or some other person or corporation. In this case, the charge, in all the counts of the indictment, is that the acts were done to injure or defraud the Galion National Bank. In directing that those offenses, or the acts which constitute them, must be committed with intent to injure or defraud the bank,

the statute does not mean that it must be made to appear that the party accused had malice or ill will toward the association. These terms, as used in the statute, mean nothing more than that the general intent to injure or defraud always arises, in contemplation of law, when one willfully or intentionally does that which is illegal or fraudulent, and which, in its necessary and natural consequences, must injure another; so that, while these offenses of issuing and putting forth a certificate of deposit, and of drawing bills of exchange, without authority of the directors, and of willful misapplication of moneys, funds and credits of the bank, must be committed by the accused with intent to injure or defraud the association, that intent may be shown, or may be conclusively presumed, from the doing of wrongful, fraudulent, and illegal acts, which, in the necessary results, naturally produce loss or injury to the association.

The law presumes that every man intends the legitimate consequences of his acts. Wrongful acts, knowingly or intentionally committed, can neither be justified nor be excused on the ground of innocent intent. The color of the act done, with knowledge of its natural and necessary results, determines the complexion of the intent. If, therefore, the moneys, funds, or credits of the Galion National Bank are shown to have been willfully misapplied, as charged in the several counts of the indictment, by the defendant Hays, as president of the bank, and if it be further shown that the defendant Flickinger aided and abetted therein, and that the said moneys, funds, and credits were converted from the use of the bank to the use of the parties named in the several counts of the indictment, whereby, as a necessary, natural, or legitimate consequence, the association's capital is reduced, or placed beyond the control of its directors, or its ability to meet its engagements or obligations or continue its business is lessened or destroyed, the intent to injure or defraud the bank must be conclusively presumed. Acts involving such consequences, when knowingly and wrongfully committed, establish the guilty intent to injure or defraud mentioned in the statute, and disclose moral turpitude utterly inconsistent with an innocent intent. And the same rule of construction should be by you applied in the consideration of the counts charging the unlawful issuing, without the authority of the directors, of the certificate of deposit and of the drafts mentioned in the indictment.

Further, in this connection, I instruct you, with reference to the terms "with intent to injure or defraud," that ordinarily the intent with which a man does a criminal act is not proclaimed by him. Ordinarily there is no direct evidence by which a jury may be satisfied, from the declarations of one charged with crime, as to what he intended when he did a certain act. The statute does not mean that it must be made to appear to the jury, by proof which convinces their minds beyond a reasonable doubt, that the defendants had malice or ill will toward the bank, or that they intended to wreck it. The intent to injure or defraud, contemplated by the statute, is not inconsistent with a deep and abiding interest on the part of the accused in the prosperity of the bank and a sincere desire for its ultimate success and welfare.

The counts charging misapplication of funds describe such misapplication, in certain forms, as follows: In counts 4, 5, 6, 7, 8, 9, 10, and 11, by discounting certain notes of the Flickinger Wheel Company for the use and benefit of, and crediting the proceeds to, the wheel company; the wheel company and the indorsers of the several notes being then and there wholly insolvent, as Hays and Flickinger then and there well knew. In counts 12, 13, 14, 15, 16, 17, and 18, by discounting certain notes of the Decatur Buggy Company for the benefit of, and crediting the proceeds to, the Flickinger Wheel Company; the wheel company and the buggy company being then and there wholly insolvent, as Hays and Flickinger well knew. In counts 46, 47, and 48, by discounting sundry notes of different concerns for the benefit of, and crediting the proceeds to, the Flickinger Wheel Company; the wheel company and the makers of the notes being then and there wholly insolvent, as Hays and Flickinger then and there well knew. In count 49, by discounting for the benefit of, and crediting the proceeds to, the Galion Wagon & Gear Company, a draft of the Galion Wagon & Gear Company; the maker and acceptor being then and there wholly insolvent, as Hays and Flickinger then and there well knew. In counts 50, 51,

and 52, by discounting certain notes of the Galion Wagon & Gear Company to the Flickinger Wheel Company for the benefit of, and crediting the proceeds to, the Flickinger Wheel Company; both of said companies being at the time wholly insolvent, as Hays and Flickinger then and there well knew. In counts 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, and 31 by paying out of the funds of the bank to the Decatur Buggy Company on the order of the Flickinger Wheel Company, the amounts of the several checks described in these counts; the Flickinger Wheel Company not having, at the time the checks were paid, any funds on deposit in the bank to its credit, and the Flickinger Wheel Company being then and there insolvent and entitled to no credit from said banking association, as Hays and Flickinger both then and there well knew. In counts 37, 38, 39, 40, 41, 42, 43, 44, and 45, by discounting and passing to the credit of the Flickinger Wheel Company the proceeds of certain drafts therein described, aggregating some $57,000, which drafts the indictment charges were worthless, unsecured, false, fictitious, fraudulent, and unauthorized, and that the Flickinger Wheel Company was insolvent, which facts, it is charged, were known to the defendants.

It will thus be seen that, under the general classification of the charge of misapplication of funds of the bank, several different forms of offenses are described. As respects all of these charges of misapplication, the same general rules of law are to be applied, with some additional rules respecting those misapplications included in the counts charging such misapplication by the discounting of drafts on the Vehicle Wheel Club. We will therefore first consider the rules applicable to the charges of discounting paper of the Flickinger Wheel Company, the Decatur Buggy Company, the Galion Wagon & Gear Company, the several notes described in counts 46, 47, and 48, and the checks of the Flickinger Wheel Company to the order of the Decatur Buggy Company, drawn on the account of the Flickinger Wheel Company, and paid when the Flickinger Wheel Company had no funds to its credit, and when it is charged it was entitled to no credit and was insolvent. In order that the defendant Hays may be found guilty on any one of these counts of thus applying the funds of the bank, it must appear, by proof which satisfies you beyond a reasonable doubt, that at the time of the commission of his several acts the several concerns liable on the particular paper on account of which credit was given were insolvent, that Hays knew they were insolvent, and that he gave the credit, and thus misapplied the funds of the bank, for the purpose of injuring or defrauding the bank.

It is not a misapplication of the funds of a bank, as that term is used in the law, merely that one should give credit to an insolvent person or corporation; nor is it a misapplication of the funds of a bank for one merely to honor a check of a depositor at a time when there are no funds to the credit of the depositor. In either case, the element of an intent to injure or defraud the bank must exist; and that element does not exist if the person who does the act complained of does it in good faith, with the expectation that, in the one case the note which was discounted will be paid, or, in the other case, that the overdraft of the depositor's account will be made good. It is wholly a question of intent, and of good faith. It is impossible to look into the mind of a man, to discover what intent therein lies, or what its actual state is. We can judge only by circumstances, aided by certain rules of law which experience has shown to be just and useful; and it is my duty to say to you, in this connection, that what the intent of the defendants was in respect to these several acts, and whether or not they in good faith believed these concerns and individuals to be solvent, are questions for you to determine, as best you may, from a consideration of the facts and surrounding circumstances.

On this question of intent and good faith, many facts produced in evidence must be considered: What did Hays know about the business of the concerns involved in this indictment? What activity did he display in their business? What information came to him, growing out of their transactions with his bank? What significance is to be given to such letters or statements as he may be shown to have written or made? What influence on his conduct had his interest in the bank, as a large stockholder, on the one hand? How great was his interest in these concerns, on the other? These are circumstances which you should consider in interpreting all the evidence in the case, and es-

pecially in respect to the subject of his knowledge and of his good faith. So, upon these counts to which I have just referred, you will consider the knowledge which the defendant Hays had, and the knowledge which the defendant Flickinger had, and if you find that honestly and in good faith they believed these concerns to be solvent, and in discounting these notes and paying these checks had no intent to injure or defraud the bank, then you should return a verdict of not guilty with respect to the counts to which I have referred.

I am asked by the defendants to charge, and I do charge, what is perhaps a mere amplification of what I have already said: The burden of proving that the defendants are guilty, under the counts of this indictment charging them with allowing an overdraft or overdrafts to the Flickinger Wheel Company, beyond a reasonable doubt, is upon the government, and it is incumbent upon the government, in order to prove the charges of allowing an overdraft or overdrafts, to prove beyond a reasonable doubt that the defendant Hays, as the president of the Galion National Bank, in so doing did not act in good faith, and that at the time of allowing such overdraft or overdrafts he did not believe, and had no reasonable grounds to believe, that the money could be repaid, and that he intended by the transaction to injure or defraud the bank, and that the defendant Flickinger aided and abetted him in so doing; and in connection with these charges you should look to all the evidence as to the condition of the account of the Flickinger Wheel Company with the Galion National Bank before and subsequent to the time of allowing these overdrafts in determining the good faith of the defendant Hays. And the general principle that runs through that charge, thus requested. is applicable upon all classes of offenses charged in this indictment.

We come now to consider the remaining counts under the general charge of misapplication of the funds of the bank, namely, those counts which refer to the drafts made by the Flickinger Wheel Company on the Vehicle Wheel Club. and accepted by the Vehicle Wheel Club, by E. Flickinger, president. The charge, in all of the counts referring to these drafts, is not only that the Flickinger Wheel Company, the drawer, was insolvent, but that the drafts themselves were fictitious, unauthorized, and fraudulent. The claim made by the government is that these drafts were drawn by the Flickinger Wheel Company, through the direct act of the defendant Flickinger, with the knowledge, approval, and contrivance of the defendant Hays, when there was no indebtedness whatever, present or expected, on the part of the Vehicle Wheel Club to the Flickinger Wheel Company: that the drafts were accepted by E. Flickinger, as president of the Vehicle Wheel Club, without any authority whatever from the club, and without any basis of obligation on the part of the club; that this was done in order to injure or defraud the bank—that is, that these large sums of money were passed to the credit of the Flickinger Wheel Company, apparently on the faith of the acceptance by the Vehicle Wheel Club of the Flickinger Wheel Company's drafts.

The defendants claim that some conversation had occurred between Flickinger and some of the members of the wheel club, whereby some understanding had been arrived at that some of the stock which the Flickinger Wheel Company had on hand would be purchased by these members of the Vehicle Wheel Club. A large number of the members of the Vehicle Wheel Club—if not all of them—have testified that the wheel club had no arrangement whatever with Flickinger for the purchase of any of the stock of the wheel company, and had entered into no contract and incurred no obligation to take it. Nor do I understand that either of the defendants claim that any such contract was made or obligation created, but that the basis of these drafts was some existing or expected indebtedness on the part of some individual member or members of the club, growing out of his purchase or agreement to purchase some of the stock of the wheel company for his own use and benefit. If this be true, then I say to you that these drafts, thus accepted and discounted for the benefit of the Flickinger Wheel Company, were, in so far as they purported to be the paper of the Vehicle Wheel Club, or paper on which that club could in any respect be held liable, fictitious, and known to be such by the defendants; and if the defendant Hays procured this fictitious paper to be thus made, and discounted it in the Galion National Bank for the benefit of the Flickinger Wheel Company, with the purpose of defrauding the bank, then I say to you

that he would be guilty of the crime charged in the counts in which this paper is described. This would be true if the defendant Hays had no reason to believe that the Vehicle Wheel Club was itself responsible for the amount of these drafts and had authorized the acceptance of them.

Whether or not the discounting of this paper was done for the purpose of defrauding the bank depends upon the evidence in the case, and your determination of its effect in the light of the rules of law which I have already given and will now proceed to give you. If this paper was thus procured to be made in such form as to make it appear that the Vehicle Wheel Club was primarily responsible for its payment, in order to deceive the directors of the bank, or any other person who had the right to examine its securities, and if it was procured to be so made because the defendant Hays knew, or had reason to know, that, if the facts were known by persons having authority in respect to it, such paper would not be discounted for the benefit of the Flickinger Wheel Company, and injury to the bank resulted thereform, then such act-would be a fraud upon the bank of such character as would make the defendant Hays guilty of the crime of misapplying the funds of the bank. And if Hays was so guilty, and the defendant Flickinger aided and abetted him in the accomplishment of this act or purpose, he (Flickinger) would be guilty, as charged in these counts of the indictment, as such aider and abettor.

Whether or not such a purpose to defraud the bank existed is to be gathered by you from all the testimony. Do the circumstances surrounding the making of these drafts indicate an honest, or a dishonest, purpose on the part of these defendants? Was this transaction carried on in the way in which it was carried on, so as to deceive the directors into the belief, if they examined the drafts, that the Vehicle Wheel Club was responsible upon them, when, in fact, it was not? Is any significance in that connection to be attached to the fact that the defendant Hays caused a rubber stamp to be made, and the impression of it printed on the face of the drafts: "Accepted. Vehicle Wheel Club, ———, Pres."? What was the purpose of this whole transaction, viewed in the light of the surrounding circumstances? It is for you to say. If it was for the purpose of defrauding the bank, then the defendants are guilty under these counts of the indictment. Irrespective of the circumstances to which I have just referred, relating to the alleged fictitious and fraudulent character of these drafts, the other propositions of law which I have laid down in respect to this general branch of the case apply; that is to say, the defendant Hays would be guilty of a misapplication of the funds of the bank, growing out of the crediting of the proceeds of these drafts on the Vehicle Wheel Club to the Flickinger Wheel Company, if, at the time the proceeds were so credited, the Flickinger Wheel Company was insolvent, and Hays knew it, and did the act of thus crediting the paper of an insolvent person with intent to defraud the bank.

I come now to the second general branch of the case, namely, to those counts of the indictment wherein it is charged that the defendant Hays, with the defendant Flickinger aiding and abetting him, issued, without authority of the board of directors, with intent to defraud the bank, first, certain drafts described in counts 32, 33, 34, 35, and 36: and, second, a certain certificate of deposit referred to in counts 1, 2, and 3. It is not the contention of the government that the defendant Hays was not authorized to issue drafts and certificates of deposit; and I say to you that, while there was no specific authority given by the board of directors to Hays to issue these obligations of the bank, yet he had authority to issue drafts and certificates of deposit. His authority in this respect arose out of the general conduct of the business of the bank; but he did not have authority to issue drafts or certificates of deposit, except in accordance with the custom of the bank, and no action of the directors could authorize him to issue drafts or certificates of deposit for the purpose of injuring or defrauding the bank.

As respects the drafts referred to in counts 32, 33, 34, 35, and 36, they were issued, four of them to the Decatur Buggy Company, and one to Elwood, who was at the time president of the Decatur Buggy Company. As to these, the defendant Hays claims that they are exactly similar transactions to those described in counts 19 to 31, inclusive, and represented the proceeds of certain commercial paper received by the Decatur Buggy Company in the usual course

of business, and by it sent to the Flickinger Wheel Company, to be discounted in the Galion National Bank on the indorsement of the Flickinger Wheel Company for the benefit of the Decatur Buggy Company; that in the cases described in counts 19 to 31, inclusive, to which I have already referred, the proceeds of this commercial paper were passed to the credit of the Flickinger Wheel Company, and the Flickinger Wheel Company thereupon made checks to the Decatur Buggy Company for the amount of the proceeds. As I have already stated, the crime alleged in counts 19 to 31, inclusive, is based upon the payment of these checks when the Flickinger Wheel Company did not have the amount of them to its credit. As to the drafts referred to in counts 32 to 36, inclusive, they likewise represented proceeds of this commercial paper of the Decatur Buggy Company, indorsed by the Flickinger Wheel Company; but, on account of the absence of the defendant Flickinger, there was no one authorized to draw the checks of the Flickinger Wheel Company and therefore, instead of passing the proceeds of this commercial paper to the credit of the Flickinger Wheel Company, in three instances drafts on the Commercial National Bank of Cleveland, and in the other instances an order on the Galion National Bank itself, were sent directly to the Decatur Buggy Company by the defendant Hays, and in due course of business were paid out of the funds of the Galion National Bank. Now I say to you that if, at the time that Hays made these drafts, he discounted the paper of the Decatur Buggy Company in the belief that the paper was good and would be paid, then I say to you he acted in good faith and with the authority of the board of directors; for, under the custom existing in that bank, he had authority to discount such paper, and to pay to the company entitled to the proceeds the amount coming to it, either by passing such proceeds to the credit of its account, or by giving it drafts on the bank's correspondents.

Counts 1, 2 and 3 refer to a certificate of deposit for $10,000, issued under the direction of Hays on the 12th day of January, 1904, to the defendant Flickinger. The first count charges the unlawful issue, the second count charges the unlawful putting forth, and the third count charges the unlawful issuing and putting forth, of this certificate. If a crime was committed by either or both of these parties in respect to this certificate, under this indictment only one crime was committed. The three counts are put into the indictment for the purpose of charging the same offense in several different ways. If you should find, under the instructions that I have given you and am about to give you, that the defendants committed the crime of unlawfully issuing, or putting forth, or both, this certificate of deposit, you will have performed your duty if you find them guilty on any one of these three counts. I have already told you that the defendant Hays had general authority to issue certificates of deposit; that is to say, he had authority to issue certificates of deposit in the usual course of business, according to the custom of banking as carried on in that bank. But he did not have authority to issue certificates of deposit in violation of ordinary banking methods, with intent to conceal from the directors the fact that they were so issued, and with intent to injure or defraud the bank. The defendant Hays claims that this certificate of deposit was issued to the defendant Flickinger on the faith and the basis of a note for a like amount which the defendant Flickinger then and there gave to the bank, that he believed Flickinger to be solvent, that he took the note in good faith, and that, as it was a note drawing 6 per cent. interest, the same rate which the certificate drew, the proceeds of that note, which Flickinger was entitled to have passed to his credit, would be $10,000, and thus furnish a proper basis for the issuance of the certificate for that amount.

It is in evidence that for some reason this note was not entered in the discount register, that the certificate of deposit did not have the regular serial number which a certificate of deposit of that date would in the ordinary course of business have, and that the certificate of deposit was not entered on the books of the bank, according to its custom. Whether these circumstances are explained to your satisfaction is wholly a question for you to determine. The defendant insists that the purpose of issuing the certificate, on the faith of the note of Flickinger, was to provide funds with which to wipe out, to that extent, an overdraft of the Flickinger Wheel Company, then existing. The government claims that the failure to enter the note on the discount register

of the bank, and the failure to enter the certificate of deposit on the certificate of deposit account, were a mere device whereby Hays intended to conceal from the directors of the bank, or the bank examiner, or both, the fact that such note had been taken or such certificate issued; that the certificate was intended to be used temporarily; and that, when returned, or taken care of otherwise than by the bank itself with its own funds, the Flickinger note and the certificate could be destroyed, and thus all knowledge of the existence of the transaction be obliterated.

The amount of this being $10,000, it was an amount in excess of 10 per cent. of the capital stock of the bank, and therefore illegal, but not criminal; that is to say, the law forbids the liability of any one person to the bank, for money borrowed, in excess of one-tenth of the capital stock actually paid in. Now, was this certificate of deposit issued by Hays without authority of the directors, and with intent to injure or defraud the bank? Under all the evidence bearing on this branch of the case, do you believe that Hays in good faith believed that he was authorized by the board of directors to issue a certificate of deposit for $10,000 in return for Flickinger's note of a like amount, due in six months, the certificate to be used as collateral security for Hays' note in the Sandusky bank, and the proceeds to be credited to the account of the Flickinger Wheel Company? If you believe that Hays did so believe that he had authority from the board of directors to issue such a certificate of deposit, then he would not be guilty of the offense charged in counts 1, 2, and 3 of this indictment. In answering that question, you may consider whether or not the defendant Hays then had any opinion, belief, or conviction as to what would be the action of the board of directors if this proposed transaction had been called to their attention, together with a knowledge of all of the business of these concerns of which Hays had knowledge. If Hays believed that, if the board of directors was in possession of all the information which he possessed about the Flickinger Wheel Company and the bank, they would not have consented to the issue of this certificate of deposit, then I say to you that the certificate was not issued with the authority of the board of directors; and if the natural and necessary consequence of the act of issuing it was to injure or defraud the bank, then I say to you that he would be guilty of the offense charged in counts 1, 2, and 3.

It is not absolutely required that the proof should show as to any particular count in the indictment, that the exact amount charged in such count as having been misapplied was in fact misapplied; but, if all the other elements necessary to constitute the offense are present, proof of the misapplication of less than the full amount charged is sufficient. It is your duty as jurors to try the defendants on the charges made against them in the indictment, and to determine their guilt or innocence from the testimony. You should not be moved from your duty by any sympathy, either for the defendants or for their respective families, however natural it may be for you to feel sympathy for the persons most nearly concerned with the result of your verdict. Nor should you, by any impulse to perform a public duty, be led to bring in any verdict which is not fully justified by the evidence. You will consider this case wholly without regard to the consequences of your verdict. You are here to determine this case according to the law and the evidence, and according to them alone.

I have already called your attention to the fact that counts 1, 2, and 3 refer to the same transaction, and that, if you find the defendants guilty of the crime therein charged, a verdict of guilty as to one of such counts is sufficient. So, also, you will discover, when you examine the indictment, that some of the counts duplicate the offense; that is to say, certain notes or other instruments may be separately the subject of certain counts, and later on all of the notes of a certain class may be joined in a single count of the indictment. It will not be necessary for you to return verdicts of guilty both upon the counts based upon the separate instruments and upon those based upon the instruments where all are joined in a single count.

If you should find the defendants guilty on all of the counts of the indictment, it will be sufficient for you to return a verdict that they are guilty as they stand charged in the indictment. If you find the defendant Hays only guilty on all of the counts of the indictment, then you should find a general

verdict of guilty against Hays, and a general verdict of not guilty against Flickinger. If you find them, or either of them, guilty on some counts, and not guilty on others, you will so indicate your finding by your verdict.

As I have heretofore said, you cannot find the defendant Flickinger guilty on any count, unless you shall also find the defendant Hays guilty on the same count.