STOUT v. UNITED STATES.*

(Circuit Court of Appeals, Eighth Circuit. November 15, 1915.)

No. 3900.

1. BANKS AND BANKING ⬤⟶257—NATIONAL BANKS—CRIMINAL PROSECUTIONS
   —INDICTMENT.
   An indictment charged in substance that accused, while president of a
   national bank and by the use of the authority of his position, loaned its
   funds to a mill company, which was known by him and not known by the
   bank or its directors to be hopelessly insolvent, under circumstances natu-
   rally leading to the loss of the money loaned and so resulting, all with
   intent to injure and defraud the bank. *Held*, that this, with the details
   set forth, sufficiently stated an offense under Rev. St. § 5209 (Comp. St.
   1913, § 9772), providing that every president of a national banking asso-
   ciation, who willfully misapplies any of the moneys, funds, or credits of
   the association, shall be punished as therein provided.
   [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§
   965, 966, 970-976; Dec. Dig. ⬤⟶257.]

2. CRIMINAL LAW ⬤⟶1159—APPEAL—QUESTIONS OF FACT.
   On appeal in a criminal case, the question is whether the verdict was
   supported by substantial evidence, and not whether the proof of guilt was
   made beyond a reasonable doubt; that being a question for the jury.
   [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3074-3083;
   Dec. Dig. ⬤⟶1159.]

3. CRIMINAL LAW ⬤⟶811—INSTRUCTIONS—SINGLING OUT TESTIMONY.
   When an instruction in a criminal case proceeds upon a recital of facts
   and circumstances of which evidence has been received, and a deduction
   is drawn from them which, if adopted by the court, would be practically
   a direction to acquit, the recital should be full and comprehensive and
   not a mere sidelight on the case; and hence instructions singling out a
   part of the proof adduced as being insufficient to show guilt or criminal
   intent were properly refused.
   [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1787,
   1969-1972; Dec. Dig. ⬤⟶811.]

4. CRIMINAL LAW ⬤⟶829—INSTRUCTIONS COVERED BY THOSE GIVEN.
   Where the charge contained a definite statement of the offense set
   forth in the indictment, and told the jury that accused could not be
   convicted of something else, an instruction that accused was not on trial
   for various defaults or misconducts which were enumerated was un-
   necessary, and properly refused.
   [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2011; Dec.
   Dig. ⬤⟶829.]

5. CRIMINAL LAW ⬤⟶822—INSTRUCTIONS—CONSTRUCTION OF CHARGE AS A
   WHOLE.
   Portions of the charge claimed to be objectionable should be viewed in
   their proper context.
   [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1990, 1991,
   1994, 1995, 3158; Dec. Dig. ⬤⟶822.]

6. BANKS AND BANKING ⬤⟶256—CRIMINAL OFFENSES—DEFENSES.
   Where, though the directors of a national bank knew that loans were
   being made to a mill company upon so-called bills of exchange, with
   wheat tickets attached indicating the amount of wheat purchased by the
   mill company, there was evidence that it was accused, the president of
   the bank, and not the directors, who established this custom, that he alone
   knew the mill company was insolvent and was not keeping the wheat or

⬤⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Rehearing denied January 24, 1916.

the flour product as security for the loans, and that in fact the loans were wholly unsecured, that he purposely refrained from informing the directors of the true condition, and in some instances expressly misrepresented it to them, the knowledge of the directors of the custom and the apparent form of the loans, and their reliance upon the semblance of security which did not in fact exist, did not relieve accused of liability for misapplying the funds of the bank.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 958–964, 967; Dec. Dig. ⬤⟲256.]

7. CRIMINAL LAW ⬤⟲830—INSTRUCTIONS—FAILURE OF ACCUSED TO TESTIFY.

Act March 16, 1878, c. 37, 20 Stat. 30 (Comp. St. 1913, § 1465), provides that a person charged with crime shall at his own request, but not otherwise, be a competent witness, and that his failure to make such request shall not create any presumption against him. On a trial on which there had been no wrongful comment on defendant's failure to testify requiring correction by the court on its own motion, defendant requested an instruction that he had seen fit to rest his case upon the government's evidence, including such testimony as might have been elicited upon cross-examination of the government's witnesses, that he had a perfect right to do this, and that this fact must in no wise prejudice the jury against him, but that they should take into consideration the entire evidence introduced, etc. *Held*, that the refusal of such instruction was not error, as the claim of immunity or protection was broader than the statute, since, while there should be no hurtful presumption from the failure of defendant to testify personally, this does not necessarily exclude a prejudice resulting from an entire absence of affirmative evidence in defense, nor inferences from a failure to produce evidence peculiarly within defendant's knowledge or control, not requiring personal disclosures or his presence upon the witness stand, and moreover the court might well have understood that the purpose of the instruction was to assail the sufficiency of the government's evidence, rather than to claim the immunity afforded by the statute.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2012, 2017; Dec. Dig. ⬤⟲830.]

8. CRIMINAL LAW ⬤⟲656, 721—TRIAL—COMMENTS ON FAILURE OF ACCUSED TO TESTIFY.

Act March 16, 1878, c. 37, 20 Stat. 30 (Comp. St. 1913, § 1465), restrains both court and counsel from commenting upon the failure of accused to testify.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1524–1533, 1672; Dec. Dig. ⬤⟲656, 721.

Comments of counsel and instructions on failure of accused to testify, see note to McKnight v. United States, 54 C. C. A. 373.]

9. CRIMINAL LAW ⬤⟲827—INSTRUCTIONS—FAILURE OF ACCUSED TO TESTIFY.

If requested, defendant is entitled to an affirmative instruction that his failure to testify shall not create any presumption against him, even in the absence of wrongful comment; but the instruction requested, if not in the language of the statute, should fairly express its thought, so the court may be apprised of what is desired.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2006; Dec. Dig. ⬤⟲827.]

10. CRIMINAL LAW ⬤⟲857—IMPEACHING VERDICT—MISCONDUCT OF JURY.

A verdict in a criminal case cannot be impeached by showing that the jurors discussed defendant's failure to testify, where there was no outside improper influence upon the jury, and whatever occurred was in the jury room among the jurors alone.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2054, 2055; Dec. Dig. ⬤⟲857.]

⬤⟲For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Error to the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

Alvin H. Stout was convicted of misapplying moneys and credits of a national bank of which he was president, and he brings error. Affirmed.

M. C. Garber, of Enid, Okl. (Garber & Kruse, of Enid, Okl., on the brief), for plaintiff in error.

Isaac D. Taylor, Asst. U. S. Atty., of Guthrie, Okl. (John A. Fain, U. S. Atty., of Oklahoma City, Okl., and W. B. Herod, Asst. U. S. Atty., of Guthrie, Okl., on the brief), for the United States.

Before HOOK and CARLAND, Circuit Judges, and AMIDON, District Judge.

HOOK, Circuit Judge. Stout was convicted and sentenced for misapplying the moneys and credits of the First National Bank of Cherokee, Okl., of which he was president, to the use and benefit of the Cherokee Mill & Elevator Company. Rev. St. § 5209 (Comp. St. 1913, § 9772).

[1] He urges here that the fifth count of the indictment under which alone conviction was had does not charge a public offense. We think it does. In the prolixity of words there is plainly discernible the substance of a charge that the accused, whilst president of the bank and by use of the authority of his position, loaned its funds to the mill company, which was known by him to be hopelessly insolvent, not so known to the bank or its directors, and under circumstances naturally leading to the loss of the money loaned, and so resulting—all with intent to injure and defraud the bank. This, with the details set forth, sufficiently states an offense under the statute.

[2] It is also contended that the evidence was not sufficient to prove the offense. The question here is not whether we regard the proof as having been made beyond a reasonable doubt. That measure was for the jury; on appeal, the inquiry is whether the verdict of guilt was supported by substantial evidence. We think there was substantial evidence of all the essential facts of the case against the accused. As to some a different conclusion might perhaps have been drawn, but there was direct evidence upon them which was fairly submitted to the jury under instructions carefully explaining and guarding his rights; and they found against him. This was particularly so as to the ignorance of the directors of the bank of the financial condition of the mill company to which the bank's funds were loaned, its hopeless insolvency, the true nature of the loans made by the accused, including the one set forth in the fifth count of the indictment, that they were not intended as bills of exchange on which the drawers were to be held, and were not being secured either by mortgage bonds of the mill company, as represented by the accused, or by warehouse or elevator receipts, or by grain or flour held for the purpose. On the other hand, there was no doubt but that the accused was fully informed of the conditions which signified certain ultimate loss to the bank. The jury might well have been convinced that he exercised in fact a dominating control over the business of the bank, and also had much actively to

227 F.—51

do with the finances of the mill company by way of obtaining loans for it both from his bank and also from other sources from which he secretly received personal compensation. They were also justified in finding the requisite willful, unlawful intent from evidence of his reckless disregard of the bank's interests and welfare and his deception of the directors, in some instances by suppression of the facts and in others by misrepresentations as to the financial condition of the mill company and the security for the loans. There was much testimony on those matters, and the jury were warranted in believing it. One trouble with the arguments for the accused is in the failure to distinguish between the power and the responsibilities of one occupying a position of trust.

[3-6] Complaint is made of the refusal of the trial court to give certain instructions and of parts of the charge as given. Excepting in two particulars little need be said upon this subject. Some of the instructions requested were substantially embodied in the charge of the court, though not in the precise language of counsel. Others improperly singled out a part of the proof adduced as being insufficient to show guilt or criminal intent. When an instruction asked proceeds upon a recital of facts and circumstances of which evidence has been received, and a deduction is drawn from them which, if adopted by the court, would be practically a direction to acquit, the recital should be full and comprehensive, and not a mere sidelight on the case. One request sought an instruction that the accused was not on trial for various defaults or misconducts which were enumerated. But the charge of the court contained a definite statement of the offense set forth in the fifth count, and that he could not be convicted of something else. It was unnecessary to negative the other matters in detail. The parts of the charge given which are criticized are not objectionable, when viewed as they should be in their proper context.

An instruction was asked that if the loans of the bank to the mill company, of which that specified in the fifth count was one, were pursuant to a custom of the bank, of which the directors, or a majority of them, or of their committee in charge, had knowledge, and assented to, relying upon the wheat purchased by the mill company, with the moneys loaned, as sufficient security for repayment to the bank, the accused should be acquitted. The recitals cover but a part of the case against the accused, and imperfectly at that. Undoubtedly the directors knew the loans were being made upon so-called bills of exchange with wheat tickets attached indicating the amount of wheat purchased by the Mill Company. But there was evidence that it was the accused, not the directors, who established the custom referred to, that he alone knew the Mill Company was insolvent, that it was not keeping the wheat in its mill or elevators, or the flour product, as security for the loans, and that in fact the loans were wholly unsecured. There was also evidence that he purposely refrained from informing the directors of the true condition, and in some instances expressly misrepresented it to them. Under these circumstances the knowledge of the directors of the custom and the apparent form of the loans, and their reliance upon the semblance of security which did not in fact exist, would not

relieve the accused. The indictment was framed and the case was tried as though the knowledge and approval of the directors would be a defense. As to this, see Flickinger v. United States, 150 Fed. 1, 79 C. C. A. 515.

[7-9] The most debatable question arises from the failure of the court to give that part of the following requested instruction which we have italicized:

*"The defendant has seen fit to rest his case upon the evidence which has been introduced on behalf of the government, including such testimony as may have been elicited upon cross-examination of the government's witnesses. You are instructed that he had a perfect right to do so, and that fact must in no wise prejudice you against him.* But you should take into consideration the entire evidence which has been introduced in the case, including such testimony as may appear to you to be in his behalf, bearing in mind at all times that, before the defendant can be convicted of the crime charged in the indictment, you must be satisfied beyond a reasonable doubt of his guilt from the evidence introduced in the case, and that the presumption of his innocence continues through every part of the case until overcome to your satisfaction by the evidence beyond such reasonable doubt. And in arriving at a verdict in this case you should take into consideration all of the evidence which has been introduced, and if after a full and careful consideration thereof you are uncertain or have a reasonable doubt as to the guilt of the defendant, it is your duty to find him not guilty."

All not italicized was fully covered in the general charge. The accused, who had offered neither himself as a witness nor other evidence in defense, now urges that there has been a violation of his right and immunity under Act March 16, 1878, 20 Stat. 30, c. 37, which provides:

"That in the trial of * * * indictments * * * against persons charged with the commission of crimes, * * * in the United States courts, * * * the person so charged shall, at his own request but not otherwise, be a competent witness. And his failure to make such request shall not create any presumption against him."

This statute restrains both court and counsel from comment upon the failure of the accused to testify. Wilson v. United States, 149 U. S. 60, 13 Sup. Ct. 765, 37 L. Ed. 650. If he asks it, he is entitled to an affirmative instruction upon the subject, even in the absence of wrongful comment. But an instruction requested, if not in the language of the statute, should fairly express its thought, so the court may be apprised of what is desired. Here nothing had occurred during the trial requiring correction by the court on its own motion, and its attention was not directed to the immunity, unless by the italicized words above. They make no direct reference to the failure of the accused to testify and the absence of presumption against him on that account. On the contrary, it might have been inferred that the purpose was to assail the sufficiency of the government's evidence against the accused. That matter was fully covered in the court's charge to the jury. The court may well have regarded the instruction asked as a mere reassertion of the claim of counsel when the government rested its case that:

"The defendant Stout elects to rest his case upon the evidence offered by the government and the facts and circumstances as they have been developed in the cross-examination of the witnesses for the government, believing that

it has been conclusively shown that the transactions charged in the indictment were bona fide, made in good faith, and without any intent to injure or defraud the bank."

But, if this be not so, the claim of immunity or protection seems broader than the statute. The accused refrained, not only from testifying himself, but also from offering any evidence whatever, by other witnesses or by records, and he seeks to enlarge the immunity from a presumption against him on the former ground to an immunity from prejudice on account of the latter. We think that is inadmissible. There should be no hurtful presumption from the failure of an accused personally to testify, but that does not necessarily exclude a prejudice resulting from an entire absence of affirmative evidence in defense, nor inferences from a failure to produce evidence peculiarly within his knowledge or control, not requiring personal disclosures or his presence upon the witness stand.

[10] Complaint is also made that on a motion for a new trial the accused was not allowed to show that after the case was submitted to the jury, and while they were deliberating upon it in the jury room, the jurors discussed his failure to testify in his own behalf. The information of this incident came from remarks by two jurors after the verdict was returned, and the accused asked a subpœna for them and other jurors to appear before the court and testify about it. There was no claim of outside improper influence upon the jury, as in Mattox v. United States, 146 U. S. 140, 13 Sup. Ct. 50, 36 L. Ed. 917. Whatever occurred was in the jury room, among the jurors alone, and became wound up in the verdict. The verdict cannot be impeached in that way. McDonald v. Pless, 238 U. S. 264, 35 Sup. Ct. 783, 59 L. Ed. 1300; Id., 206 Fed. 263, 124 C. C. A. 131; Hyde v. United States, 225 U. S. 347, 32 Sup. Ct. 793, 56 L. Ed. 1114, Ann. Cas. 1914A, 614.

We discover no error in the admission of evidence. In a case of this character the scope of inquiry is necessarily very broad, and the proper limits were not transgressed.

The sentence is affirmed.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

