### BLOCK v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. June 28, 1920. Rehearing Denied September 13, 1920.)

No. 5394.

1. **Criminal law ⬉822(1)—Entire charge must be considered.**

On assignments of error to the charge of a court, the entire charge must be considered.

2. **Conspiracy ⬉47—For illegal transportation of liquor shown by evidence.**

A conviction for conspiracy to transport liquor into a prohibition state, in violation of Reed Amendment, § 5 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 8739a), held sustained by evidence tending to show that defendant, who was a wholesale dealer in Missouri, had made an arrangement with a customer in Omaha, pursuant to which on three occasions he delivered to an agent of such customer an automobile load of whisky, knowing that it was to be transported to Omaha in a prohibition state.

In Error to the District Court of the United States for the District of Nebraska; Thomas C. Munger, Judge.

---

⬉For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Criminal prosecution by the United States against Meyer Block. Judgment of conviction, and defendant brings error. Affirmed.

Benjamin Phillip, of St. Joseph, Mo. (R. E. Culver, of St. Joseph, Mo., on the brief), for plaintiff in error.

Thomas S. Allen, U. S. Atty., of Lincoln, Neb. (Frank A. Peterson, Asst. U. S. Atty., of Omaha, Neb., on the brief), for the United States.

Before HOOK and CARLAND, Circuit Judges, and TRIEBER, District Judge.

TRIEBER, District Judge. The plaintiff in error, hereinafter referred to as the defendant, was jointly indicted with Henry Gaspari and Sherman Chinberg, charged with violation of section 37 of the Penal Code (Comp. St. § 10201) by conspiring with his codefendants to violate the Reed Amendment (Act of March 3, 1917, c. 162, par. 5, 39 Stat. 1069 [section 8739a, U. S. Comp. St. 1918, Comp. Stat. Ann. Supp. 1919]). Chinberg was not placed on trial and testified as a witness for the government. Gaspari and Block were tried jointly, and both were found guilty by the jury. Block alone prosecutes this writ of error.

The assignments of error which are insisted on are: (1) That the court erred in refusing to direct a verdict of not guilty; (2) the refusal of certain instructions asked in behalf of this defendant; (3) the failure of the court to call the jury's attention to some of the testimony of the defendant, and calling the jury's attention to Chinberg's testimony as to his conversations with Block at the time of the purchases of the whisky.

In their brief and oral argument counsel for defendants also complain of the charge relating to the defendant's proof of good character. As to the latter contention, there was not only no exception taken to that part of the charge of the court, but it is more favorable than the special request asked in behalf of the defendant on that issue. He cannot complain of that.

The assignment that the court did not call the jury's attention to the denials by the defendant relating to his conversation with Chinberg is without merit, as the court, when this exception was taken, told the jury:

"Mr. Strode calls my attention to the fact that I did not say Mr. Block denies Mr. Chinberg's testimony. I hardly think that is necessary, because you remember he did that. I refer to the testimony simply as showing the basis for some legal propositions. I haven't indicated to you my opinion of the guilt of the defendants here, although I might do so if I desired. I have the right to do so, but I intend to leave that to you entirely."

[1] Although there were no other exceptions to the charge of the court, the personal liberty of the defendant being at stake, we have carefully examined the charge and find no prejudicial error. Counsel point to some parts of the charge which, if separated from the rest of the charge, might have been erroneous. But this may not be done. The entire charge must be taken as a whole. Stout v. United States,

227 Fed. 799, 142 C. C. A. 323, certiorari denied by the Supreme Court 241 U. S. 664, 36 Sup. Ct. 549, 60 L. Ed. 1227.

In addition to the excerpt from the charge complained of, the court after reviewing the evidence, and charging the jury as to his codefendants, told the jury:

"Now, does this evidence suffice to show, if you believe it, that Block was a party in the conspiracy to cause intoxicating liquor to be transported in interstate commerce? That is, to procure it to be transported in interstate commerce, there must be an intentional participation by a defendant, such as Block, in transactions with a view of the furtherance of the common design and carrying out the purpose of the scheme. Now, did Block have knowledge of the design of the conspiracy and intentionally participate in the scheme? It would not relieve him, if he sold the liquor for the purpose of having it carried in interstate commerce, that he was a licensed dealer in St. Joseph. The act of Congress doesn't say, as I read it to you, and you understand it that one may cause it to be carried in interstate commerce into a dry state, if he is a liquor dealer or saloon keeper some place. There is no exception of this kind.

"It would not relieve Mr. Block, if in pursuance of a common mutual understanding between the parties he furnished the liquor to be transported in interstate commerce, that he got pay for it. The act of Congress makes no exception of that kind.

"The act of Congress says that no one may cause intoxicating liquors to be transported. Now, if the act of Congress had said no one may transport liquor in interstate commerce, the evidence here would not show that Mr. Block transported it; but the act of Congress says no one may cause it to be transported, and when the charge is that there was a conspiracy to cause it to be transported, that means he shall do no effective act that will cause, or which will result in, its being transported.

"Now one man in a conspiracy may arrange to furnish the money to buy, another may agree to go and get and bring back the liquor, another may sell it; but if the common purpose and agreement is that the liquor is to be caused to be transported in interstate commerce, then each one may be said to be engaged in a conspiracy to cause the liquor to be transported in interstate commerce."

The special instructions asked in behalf of the defendant, aside from that asking for a directed verdict, in favor of the defendant were fully covered by the general charge, and it therefore was not incumbent on the court to give them in the language requested by the defendant.

[2] Was the evidence sufficient to warrant the submission of the question of guilt or innocence to the jury? The rule is too well established to require the citation of authorities that, if there is substantial evidence to warrant a verdict of guilty, it is the duty of the court to submit the case to the jury, although there is evidence which, if believed by the jury, would justify an acquittal. Evidently the jury believed the testimony of the government's witnesses, rather than that of the defendant. This they had a right to do, as they are the sole judges of the credibility of the witnesses, and the weight to be given to their testimony.

There was substantial evidence to justify the jury to find the following facts: The main witness for the government was the defendant Chinberg. As he was one of the conspirators, the court properly charged that his evidence must be taken with some caution, unless corroborated by other witnesses or circumstances, although the jury may ren-

der a verdict of guilty on the uncorroborated testimony of a coconspirator, if satisfied that he testified truthfully. The court in its charge on that point followed what was declared to be the law in Caminetti v. United States, 242 U. S. 470, 37 Sup. Ct. 192, 61 L. Ed. 442, L. R. A. 1917F, 502, Ann. Cas. 1917B, 1168.

The testimony of this witness was to the effect that the defendant Gaspari, who resided at Omaha, Neb., proposed to him that he would pay him $100 for every trip he would make to St. Joseph, Mo., to get a load of whisky from the defendant Block, with whom he had made arrangements to that effect, and bring it to him at Omaha, Neb. The witness, being the owner of an automobile, agreed to do so, and in October, 1917, he made the first trip to St. Joseph in his automobile, and obtained the whisky from this defendant. He was accompanied on this trip by one Ed Davis, and the route selected by him was the Washington Highway, which runs through the state of Kansas. Upon his arrival at St. Joseph, he went to the liquor establishment of the defendant Block, telling him that he had come for a load of whisky for the man in Omaha, who had contracted for 100 cases of whisky; that the defendant replied, "I recollect," or "I understand." He obtained 20 cases of whisky from him, and paid him $17.50 a case, the money to pay for it having been given to him by the defendant Gaspari, who at the time told him that he wanted it for the purpose of selling it in Omaha.

The whisky purchased from the defendant was not placed in his automobile at Block's establishment, but he told him to go to a livery barn, where it would be delivered to him. As Chinberg was a stranger in St. Joseph the defendant sent one of his employés with him to show him where the barn, where he was to receive the whisky, was located. A short time thereafter the witness went back to the barn and found the whisky there, placed it in his automobile, and carried it to Omaha to be delivered to Gaspari. The same week Gaspari sent him for another load. On that trip he was again accompanied by Ed Davis. It is proper to state that Davis did not testify at the trial, as it was shown that he was then in a hospital, suffering from some wounds he had received in a fight, and was therefore unable to appear in court.

On that trip he purchased again 20 cases of whisky from the defendant, paid for them, and was told to call for them at the livery barn where he received the whisky on the former occasion. Later he went to the barn, found the whisky he had bought from Block there, and carried it to Omaha. When he arrived on that trip at Block's liquor establishment, the defendant Block asked him how everything was in Omaha, and how the road was, and suggested to him that he would find the roads through Missouri better than through Kansas, where the Washington Highway was; but the witness again carried the whisky to Omaha through Kansas.

In November, 1917, Gaspari sent him for a third time to get whisky from Block. On that trip he was again accompanied by Ed Davis and by one Henry Klok. When he came to the defendant's liquor establishment, he asked him for pints, when Block said to him that:

"They must be pretty dry up there (referring to Omaha). You are using more whisky than I am able to keep bottled up in pint bottles; that he could not let him have all the whisky in pint bottles, as Gaspari wanted them, but he could let him have part of them in pint bottles."

He thereupon sold him 11 cases of quarts, 10 cases of pints, and a 10-gallon keg of whisky. Block gave him a statement showing the purchase. Davis and Klok were present at that time. This statement, which was introduced in evidence, he testified was written by Block in his presence and handed to him. He testified to the following conversation with Block at that time:

"I said, 'I came back for another load of whisky for the dago.' He said, 'All right. How much did you want?' and I said, 'Twenty quarts,' and after we got to figuring we took 20 cases and a 3-gallon keg. He instructed his help to load the whisky on a transfer wagon and take it to the barn, and told me to go to the barn the next morning and get it, which I did. It was loaded into my car at the barn."

He received $100 from Gaspari for each of the three trips that he made. The last load of whisky was seized by the sheriff of Cass county, at Plattsmouth, Neb. He further testified that he did not go to any other wholesale house at St. Joseph, because he was sent by Gaspari to Block's place, although there were a number of wholesale houses in that vicinity.

The witness Klok testified that on his last trip of Chinberg's he went with him to St. Joseph, and to the store of the defendant Block. He then related what took place:

"When we came into the store, Mr. Block greeted us with, 'How are you, boys? How is everything in Omaha?' and Chinberg said, 'I am here for another load for the dago,' and Block said, 'Owing to business conditions, he would have to give him some quarts, and he couldn't give him all pints, and he thought it would be all right with Gaspari.' I saw Mr. Block figure up this paper (identifying the bill or memorandum of the sale of the whisky which had been introduced in evidence by Chinberg), and saw Chinberg pay for the whisky. Mr. Block then told him he would have the whisky down to the barn about 8 o'clock in the morning. The conversation and purchase were in the evening. In the morning we stopped first at Mr. Block's place, and he told us that he hadn't sent the load down to the barn yet. He invited us to take a drink, and told us he would have it down to the barn as soon as possible. When we went to the barn, the liquor wasn't there yet; but a little later it was brought there on a truck. That was about 10 or 15 minutes after we had left Block. It was then unloaded from the truck and put into our car, and we started home through Kansas. When we reached Plattsmouth, Neb., we were arrested and the liquor taken from us. They locked us up during the night, and the next morning Chinberg gave bond for both of us, and we went to Omaha, to Mr. Gaspari's house, and we told him we got caught, and he said he had been down to the bridge two or three times trying to locate us."

By stipulation of the parties it was agreed that if Mr. Quinton, the sheriff of Cass county, who had seized the whisky at Plattsmouth, were present he would testify that he seized 20 cases of whisky, one keg of whisky, and one bottle of gin from Chinberg, who was transporting it in an automobile through Plattsmouth, and that the contents were whisky. The sheriff was unable to be present at the trial, and this agreement was entered into by the government and the defendants.

This certainly was sufficient to require the cause to be submitted to the jury.

It is also claimed that there was no evidence that the conspiracy, if there was one, was formed in Cass county, Neb., as charged in the indictment, but could only have been formed in St. Joseph, Mo., as Block never was in Cass county, Neb. But it is sufficient if an overt act was committed in Cass county, although the conspiracy was formed in another state. Hyde v. Shine, 199 U. S. 62, 76, 25 Sup. Ct. 760, 50 L. Ed. 90; De Orozco v. United States, 237 Fed. 1008, 1013, 151 C. C. A. 70; Shea v. United States, 236 Fed. 97, 101, 149 C. C. A. 307.

Other alleged errors, not excepted to at the trial, have been argued by counsel. They have received careful consideration, but they are so clearly without merit that it would serve no useful purpose to prolong this opinion by referring to them.

The record is free from error, and the judgment is affirmed