REEDER et al. v. UNITED STATES.[*]

(Circuit Court of Appeals, Eighth Circuit. November 19, 1919.)

No. 5355.

1. INDICTMENT AND INFORMATION ⊗⇒71—SUFFICIENCY OF ACCUSATION.
   A crime is made up of acts and intent, and these must be set forth in the indictment with reasonable particularity of time, place and circumstances.

2. CONSPIRACY ⊗⇒43(11)—INDICTMENT FOR SEDITIOUS CONSPIRACY.
   An indictment under Criminal Code, § 6 (Comp. St. § 10170), for conspiracy to prevent, hinder, and delay by force the execution of the Selective Draft Act May 18, 1917, *held* sufficient.

3. CONSPIRACY ⊗⇒43(11)—INDICTMENT UNDER ESPIONAGE ACT.
   Counts in an indictment under Espionage Act June 15, 1917, tit. 1, § 4 (Comp. St. 1918, § 10212d), respectively charging conspiracy to violate

⊗⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Certiorari denied 251 U. S. ——, 40 Sup. Ct. 346, 64 L. Ed. ——.

sections 2 and 3 of the act by attempting to cause insubordination, disloyalty, and refusal of duty in the military and naval forces, and to obstruct the recruiting and enlistment service, *held* sufficient.

4. INDICTMENT AND INFORMATION ⚙➡129(1)—JOINDER OF COUNTS.

Counts charging separate and distinct offenses grounded upon the same transaction may properly be joined in an indictment, under Rev. St. § 1024 (Comp. St. § 1690).

5. CRIMINAL LAW ⚙➡508(9), 780(1)—TESTIMONY OF ACCOMPLICES.

While it is the better practice for courts to caution juries against too much reliance upon testimony of accomplices, there is no absolute rule of law preventing conviction upon the testimony of accomplices, if juries believe them.

6. CONSPIRACY ⚙➡27—OVERT ACTS.

Acts of defendants *held* to constitute overt acts in furtherance of the conspiracy charged.

7. ARMY AND NAVY ⚙➡40—OBSTRUCTING RECRUITING OR ENLISTMENT.

The offense of obstructing or attempting to obstruct the recruiting or enlistment service of the United States, within Espionage Act June 15, 1917, tit. 1, § 3 (Comp. St. 1918, § 10212c), may be committed by the use of words, and it is not essential to conviction that defendants' words or acts actually prevented recruiting or enlistment.

8. CRIMINAL LAW ⚙➡423(1)—EVIDENCE OF ACTS OF CONSPIRATORS.

Where the evidence showed that an organization formed by defendants affiliated with other organizations for a common and unlawful purpose, an act of such other organizations in furtherance of the common purpose is evidence against all the conspirators.

In Error to the District Court of the United States for the Western District of Oklahoma; Colin Neblett, Judge.

Criminal prosecution by the United States against Walter M. Reeder, J. T. Cumbie, B. F. Bryant, T. A. Harris, Mack F. Clark, and M. E. Stuart. Judgment of conviction, and defendants bring error. Affirmed.

Patrick S. Nagle, of Kingfisher, Okl., for plaintiffs in error.

Herman S. Davis, Asst. U. S. Atty., of Frederick, Okl. (John A. Fain, U. S. Atty., of Lawton, Okl., on the brief), for the United States.

Before CARLAND and STONE, Circuit Judges, and ELLIOTT, District Judge.

ELLIOTT, District Judge. The indictment against the plaintiffs in error, hereinafter referred to as defendants, is in three counts. The first, under section 6 of the Criminal Code (Act March 4, 1909, c. 321, 35 Stat. 1089 [Comp. St. § 10170]), charges a conspiracy to hinder and delay by force the execution of a law of the United States approved May 18, 1917 (40 Stat. 76, c. 15), entitled "An act to authorize the President [of the United States] to increase temporarily the military establishment of the United States, * * *" and by force to procure arms and ammunition, and to arm themselves with the same, and while armed to combine and offer resistance to the authority of the United States and to the enforcement and execution of said act of Congress, proclamations, etc.; the second count charges a conspiracy to cause and attempt to cause insubordination, disloyalty, mutiny, and refusal of duty in the military and naval forces of the United States.

⚙➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

and to induce, entice, persuade, and coerce the persons named in this count of the indictment to refuse to submit to and to perform their duties as a part of the military and naval forces of the United States; and the third count charges defendants with conspiracy to obstruct the recruiting and enlistment service of the United States, to the injury of the service of the United States.

Defendants were convicted upon all three counts, and sentenced for a term of six years upon the first count and for a period of two years each upon the second and third counts, the terms of imprisonment to run concurrently.

[1] The first contention of the defendants is that the court erred in overruling the demurrer to the indictment, insisting that no facts were alleged in the indictment under which a court could decide whether they were sufficient in law to sustain a conviction.

In criminal cases prosecuted under the laws of the United States, the accused has the constitutional right to be informed of the nature and cause of the accusation. The indictment must set forth the offense with clearness and all necessary certainty to apprise the accused of the crime with which he stands charged, and every ingredient of which the offense is composed must be accurately and clearly alleged. The object of an indictment is, first, to furnish the accused such a description of the charge against him as will enable him to make his defense and avail himself of his conviction or acquittal for protection against a further prosecution for the same cause; and, second, to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction if one should be had. For this facts are to be stated, not conclusions of law alone. A crime is made up of acts and intent; and these must be set forth in the indictment with reasonable particularity of time, place and circumstances. U. S. v. Cruikshank et al., 92 U. S. 542, 23 L. Ed. 588.

[2] The statute under which the first count of the indictment is drawn provides that—

"If two or more persons * * * conspire to overthrow, put down, or to destroy by force the government of the United States, * * * or to oppose by force the authority thereof, or by force to prevent, hinder, or delay the execution of any law of the United States, * * * they shall each be" punished.

It will be observed that under this particular statute an overt act is not made an ingredient of the offense, and the first inquiry is as to the sufficiency of the indictment under this statute. Has the pleader substantially complied with the rule of law as admirably stated in U. S. v. Cruikshank et al., supra?

The indictment designates the time and the place of the alleged offense definitely. It names the defendants, and alleges that they did then and there knowingly, willfully, unlawfully, and feloniously conspire, etc., with other persons named in the indictment to knowingly, willfully, unlawfully, and feloniously hinder and delay the execution of a certain law of the United States, designating it as the act of Congress approved May 18, 1917, giving the title of the act, and referring also to the proclamations of the President of the United States and

regulations in aid of said act. The indictment further alleged that the defendants knowingly, willfully, unlawfully, and feloniously opposed by force the authority of the United States, its agents and officers, in the enforcement of said act, proclamation, and regulations in so far as their provisions applied to persons subject to military duty and service thereunder, and particularly in so far as the same applied to Wright, Ratcliffe, Blackwood, and others named in the indictment. It is further alleged that the defendants did conspire, combine, and agree together with persons named in the indictment by force to procure arms and ammunition, and to arm themselves with the same, and while armed to offer individual and combined resistance to the authority of the United States and to the enforcement and execution of said act of Congress, proclamation, and regulations, to the end that they would thereby hinder, delay, and prevent the said persons from being drafted into and inducted into the military forces of the United States; alleging further that such persons and each of them were citizens of the United States within the state of Oklahoma, having registered in said state and not having been exempted from military service as provided in said act, and that, they were then and there under the duty to submit to being drafted into the military service of the United States under the provisions of said act, etc.

It will be noted that this count of the indictment with both clearness and certainty alleges the conspiracy of the defendants, entered into for, the purpose of committing the offense therein specified, describing it in the words of the statute which creates it, and to these allegations is added the names of the persons with whom they conspired, and who, with others, were to be influenced by them, together with allegations of intent and purpose, and that they were armed and prepared to carry out the purpose of the conspiracy by force. The conspiracy in this count is the gist of the crime, and every ingredient of the offense is accurately stated, and apprises the accused of the crime with which they stand charged. Clearly the accused were furnished by the allegations of this count of the indictment with such a description of the charge against them as would enable them to make their defense and avail themselves of their conviction or acquittal for protection against a further prosecution for the same cause.

[3] Counts 2 and 3 of the indictment are drawn under the provisions of the act of June 15, 1917 (40 Stat. 217, c. 30), which provide that:

"If two or more persons conspire to violate the provisions of sections two or three of this title, and one or more of such persons does any act to effect the object of the conspiracy, each of the parties to such conspiracy shall be punished," etc. Title 1, § 4 (Comp. St. 1918, § 10212d.)

This statute prohibits two or more persons conspiring to willfully cause or attempt to cause or incite or attempt to incite insubordination, disloyalty, mutiny, or refusal of duty in the military or naval forces of the United States, in the first instance; and, in the second, to willfully obstruct or attempt to obstruct the recruiting or enlistment service of the United States.

The second count of the indictment sets forth the offense charged fully and clearly in the language of the statute, and in addition thereto, with the evident purpose of preventing uncertainty or ambiguity, further alleges elements entering into and constituting the offense, as the time, place, the persons conspiring, whom they conspired with, and that the purpose of this conspiracy with the persons last named in the indictment was to knowingly, willfully, unlawfully, and feloniously combine, conspire, confederate, and agree with each other and with the persons last named in the indictment to cause and attempt to cause insubordination, disloyalty, mutiny, and refusal of duty in the military forces of the United States; and in said count it is specifically alleged that the defendants did conspire, combine, confederate, and agree with each other and the persons named in the indictment to induce, entice, persuade, and coerce Monroe Wright, and others in said count named, to fail and refuse to submit to and perform their duties as a part of the military and naval forces of the United States, when called for duty under the provisions of the act of May 18, 1917, known as the Selective Service Law, and the proclamation and regulations duly promulgated thereunder.

This count further alleges that the persons last named, with whom defendants conspired, were citizens of the United States, alleging their ages, and that they had submitted to and had been registered in accordance with the terms of said act, and it is then alleged that it was the purpose and intent of the defendants that these various persons named in the indictment, when called for duty and service in the military and naval forces of the United States, were to be disloyal to the United States, and were to mutiny and rebel against the authority of the United States, and refuse to perform their duties as a part of the military and naval forces of the United States. Thereupon overt acts are alleged, specifying the time and the place of meeting of defendants in pursuance of this unlawful conspiracy, and that it was for the purpose of effecting the object thereof, and it recites with definiteness and certainty the time, place, and substance of what was done by defendants pursuant to said alleged conspiracy and for the purpose of effecting the same.

The references to the allegations of the second count are true as to the third count, except the conspiracy alleged in the third count is a violation of that provision of the statute prohibiting obstructing the recruiting and enlistment service of the United States.

It will be seen, therefore, that this indictment is not subject to the criticism that it is uncertain, vague, or indefinite. The conspiracy charged is set out with particularity, and counsel for defendants has failed to point out any insufficiency in the statements of any of these counts, and has failed to name a single subject or particular in which there is any uncertainty or any indefiniteness. The indictment is definite and certain as to time and place, with the names of the parties charged with having entered into the conspiracy—even the identical place where it is alleged the conspiracy was formed, "at Mack Clark's farm," is set forth—and the intent and purpose with which the conspiracy was formed; and the indictment does not stop there, but par-

ticularizes the individuals whom the defendants are alleged to have intended to influence, and just what the defendants would influence them to do and not to do, with the manner in which this was to be accomplished.

It will therefore be seen that the question is not presented here as to whether or not each count of this indictment is sufficient to describe a statutory offense in the language of the statute, because the pleader has fully covered the provisions of the statute in the different counts of the indictment, and in addition thereto has definitely alleged facts and circumstances which include all material elements entering into the ingredients of the offense charged. Clearly the indictment furnished the accused with a description of the charges against them which would enable them to make their defense and avail themselves of their conviction or acquittal for protection against a further prosecution for the same cause. It fully informed the court of the facts relied upon, and the court rightly decided they were sufficient in law to support a conviction, if one should be had, and properly overruled the demurrer to the first, second, and third counts of the indictment. Cochran v. U. S., 157 U. S. 286, 15 Sup. Ct. 628, 39 L. Ed. 704.

[4] Objection is made that the court denied the motion of the defendants that they should be proceeded against upon only one count of the indictment to be elected and designated by the prosecution. These three counts are for the same transaction, and the allegations of the separate counts are stated within a distinct and separate provision of the statute; each being entirely independent of the others. This is permissible by express statute of the United States. R. S. § 1024 (section 1690, U. S. Comp. Stat.). The purpose of pleading the same transaction in several counts as to the manner or means of its commission is to avoid at the trial an acquittal by reason of any unforeseen lack of harmony between the allegations and the proof. In Dealy v. U. S., 152 U. S. 542, 14 Sup. Ct. 681, 38 L. Ed. 545, the Supreme Court of the United States said:

"It is familiar law that separate counts are united in one indictment, either because entirely separate and distinct offenses are intended to be charged, or because the pleader, having in mind but a single offense, varies the statement in the several counts as to the manner or means of its commission, in order to avoid at the trial an acquittal by reason of any unforeseen lack of harmony between the allegations and the proofs. * * * Yet, whatever the purpose may be, each count is in form a distinct charge of a separate offense, and hence a verdict of guilty or not guilty as to it is not responsive to the charge in any other count."

See Corbin v. U. S., 205 Fed. 278, 125 C. C. A. 114; Kreuzer v. U. S., 254 Fed. 34, 165 C. C. A. 444; Boone v. U. S., 257 Fed. 963, —— C. C. A. ——.

It may be added that the longest term of imprisonment imposed by the trial court upon any of the three counts of the indictment was no greater than that which might have been imposed upon either count, and the terms of imprisonment run concurrently. The sentence imposed, therefore, does not exceed that which might properly have been imposed upon conviction under any single count.

There is an exception to the failure of the court to direct a verdict

of not guilty at the close of the plaintiff's evidence. The question of the sufficiency of the evidence to sustain a verdict of guilty was not raised in the trial court by a renewal of the motion at the close of all of the evidence, and it may not now be urged by the defendants, unless, in our discretion, we determine to consider it. We find in the record no sufficient reason for the exercise of such discretion.

Defendants' exceptions numbered 2 to 7, inclusive, are largely devoted to the consideration of the effect of the testimony, and therefore to the weight to which it is entitled. The jury having seen the witnesses and heard the evidence, the weight that should be attached to the statements of the witnesses, complained of by counsel for defendants, was a matter peculiarly within the province of the jury. The record contains proof of the existence in the state of Oklahoma, where this cause of action arose, of an organization the declared purpose of which was to do the very thing prohibited by the statute above cited, and that these defendants, acting as members of such organization, actually conspired, agreed, and confederated together to do the things the indictment alleges against them and for the purposes alleged in the indictment. Numerous overt acts were shown, including the defendants arming themselves and others, and agreeing to do by force and violence the things prohibited by the statute above quoted.

Defendants object to the testimony of the witness Parker, alleging he was permitted to testify to what one of the defendants told him. The record discloses that he was present with defendants at a meeting, and that his testimony, complained of here, was an account of a report made by one of the members of the organization as a part of the proceedings at this meeting. This testimony was competent as to all defendants present.

[5] Defendants contend they were convicted on the testimony of Monroe Wright, a coconspirator, and that his uncorroborated testimony was insufficient to warrant such conviction. Wright was only one of a number of witnesses who testified to the circumstances attending the formation of the organization to which these defendants belonged, as well as an account of different meetings held by members of the organization, defendants and others. The facts and circumstances, independent of what was said and done at the meetings, tend to support and corroborate the statements of the witness Wright. The record contains no request that the court caution the jury against too much reliance upon the testimony of this witness as an accomplice, and against believing such testimony without corroboration; and while it is the better practice for courts to caution juries against too much reliance upon testimony of accomplices, and to require corroborating testimony to give credence to such evidence, there is no absolute rule of law preventing convictions upon the testimony of accomplices, if juries believe them. Caminetti v. U. S., 242 U. S. 470, 495, 37 Sup. Ct. 192, 61 L. Ed. 442, L. R. A. 1917F, 502, Ann. Cas. 1917B, 1168; Bishop, Crim. Proc. (2d Ed.) § 1081, and cases cited in the note.

[6] Defendants insist that the alleged overt acts are not such as contemplated in the provisions of the statute alleged to have been violated, being merely a series of acts embraced within the original con-

federation. If we understand the argument presented by counsel, it is that, because they occurred upon the date upon which the proofs showed the meeting was held and the purpose of the organization disclosed, they were not acts intended to carry into effect the original agreement. The conspiracy was complete when the agreement was entered into. Immediately thereafter defendants participated in holding further meetings, securing additional members of the organization, securing arms and ammunition, appointing one of defendants the representative of that organization to go to Chicago for conference with the I. W. W., and to act with them against the government of the United States in violation of the particular statute in question—all overt acts within the allegations of the indictment.

Counsel for defendants argues that the defendant Stuart's name is mentioned but three times in the record. This goes to the sufficiency of the evidence, and that question is not here for our consideration. In passing, however, it may be noted that we find much in this record in criticism of an attempt to minimize the part this defendant assumed in this prohibited transaction. It is very evident upon the face of the record that he was one of the moving spirits in the enterprise; that he was one of the first to report to the meeting at Mack Clark's farm, when he presented a report there of 75 or 100 that he had secured to join the organization and who were ready for action. The fact that he had taken this action before this meeting at Clark's farm and presented the report there as an encouragement for organization for this unlawful purpose, does not relieve him of responsibility for the agreement that was then and there entered into; nor does it tend to relieve him from responsibility for the completed offense, which is evidenced by overt acts of other coconspirators subsequent to the meeting.

[7] Defendants then contend that language is not proximately capable of causing insubordination, disloyalty, mutiny, and refusal of duty in the military and naval forces of the United States, or obstructing the recruiting service of the United States, unless the circumstances assure that it will reach members of the actual forces, or conflict with agencies of the recruiting service, as the case may be, and, further, that there was nothing said or done by defendants that ever reached members of the actual forces of the United States, or conflicted with any of the agencies of the recruiting service, and that it does not appear that a single person was ever influenced to the detriment of the government by anything said or done by the alleged conspirators.

The answer to this objection is that the indictment alleges the names of certain persons, whose ages are given and their citizenship alleged, with the further allegation that they had registered and were liable for service, and that defendants conspired with the persons so named with the intent and purpose to do the things prohibited by this statute. The Circuit Court of Appeals of the Fifth Circuit, in Deason v. U. S., 254 Fed. 259, 165 C. C. A. 547, properly construed the provisions of the act of June 15, 1917, making it an offense to willfully obstruct the recruiting or enlistment service of the United States, wherein the

court said: The word "obstruct" is not used as the equivalent of "prevent," but rather of "to make difficult," and to warrant conviction for its violation it need not be shown that defendants' words or acts prevented recruiting or enlistment.

The jury, having considered the testimony and the facts and circumstances, determined this question against the defendants, and there is substantial evidence to sustain such finding.

[8] The court refused to strike out and take from the jury testimony which defendants say was practically an assumption that the organizations known as "W. C. U." and "I. W. W." were and are illegal and outlaw organizations, without proving the same by competent evidence. An examination of this record discloses that all of this testimony had relation to the common purpose of violating the provisions of the statute, the proclamation, and regulations as charged, and that these organizations were working with defendants in the carrying out of the intents and purposes of the alleged conspiracy. A conspiracy has been shown, and these other organizations entered into that conspiracy. An act of such organizations in furtherance of the common purpose is evidence against all coconspirators; and this is so, though the conspirator committing the act was not a defendant in the case being tried. Clune v. U. S., 159 U. S. 390, 16 Sup. Ct. 125, 40 L. Ed. 269; Isenhouer et al. v. U. S., 256 Fed. 842, —— C. C. A. ——.

That the plans and purposes of these defendants were not consummated is due to no fault of theirs. It is clear that the organization of which they were members had for its purpose the violation of the statutes of the United States in question. It is equally clear they were each of them active in the formation of this organization, with a full understanding of its unlawful purpose, and cooperated toward effecting its object.

Finding no prejudicial error, the judgment of conviction is affirmed.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes