### HALL v. UNITED STATES, and four other cases.

#### Nos. 1876, 1878–1881.

Circuit Court of Appeals, Tenth Circuit.

Feb. 8, 1940.

W. E. Utterback, of Durant, Okl., for appellants.

Cleon A. Summers, U. S. Atty., of Muskogee, Okl. (Frank Watson, Asst. U. S. Atty., of Muskogee, Okl., on the brief), for appellee.

Before PHILLIPS, HUXMAN, and WILLIAMS, Circuit Judges.

WILLIAMS, Circuit Judge.

All defendants were convicted on the first count, which charged a conspiracy to commit an offense against the United States of America under the provisions 26 U.S.C.A. § 404, 1925 Edition, 26 U.S.C.A. § 1287, 1934 Edition, and Title 2 of an Act of Congress of January 11, 1934, known and designated as the Liquor Taxing Act of 1934, 26 U.S.C.A. § 1152a et seq., and sections 250[1] and 251[2] of Title 18 U.S.C.A.

The overt acts as pleaded are hereafter mentioned.

The defendant Hall during the period between October 1, 1936 and December 20, 1937 was a police officer in the city of Hugo, and James H. Lindley Chief of Police from May 4 until December 20, 1937, having been elected on first Tuesday of April (Vol. 1, Okla.Stat.1931, Section 6421, Title 11, Section 555, Okl.St.Ann.), served in that capacity, said defendants being convicted on count 1, and Hall also on counts 2 and 3, and Oscar Bearden, a constable and also a merchant police, convicted on counts 1, 2 and 3, no appeal being prosecuted, by him. Howard Rorie, convicted on counts 1, 8 and 9, prior to October 1, 1936 had been a police officer in said city, and during the time as to the offenses charged operated a pig stand at a tourist camp at the border of said city in Choctaw County on U. S. Highway No. 70. Subsequent to the time of the return of the indictment but prior to his conviction Rorie had been elected and qualified as a constable.

Joe Mobley was a night attendant at Everybody's Filling Station located in the

---

[1] (Section 250) "Whoever shall, under a threat of informing, or as a consideration for not informing, against any violation of any law of the United States, demand or receive any money or other valuable thing, shall be fined not more than $2,000, or imprisoned not more than one year, or both. (R.S. § 5484; Mar. 4, 1909, c. 321, § 145, 35 Stat. 1114.)"

[2] (Section 251) "Whoever, having knowledge of the actual commission of the crime of murder or other felony cognizable by the courts of the United States, conceals and does not as soon as may be disclose and make known the same to some one of the judges or other persons in civil or military authority under the United States, shall be fined not more than $500, or imprisoned not more than three years, or both. (R.S. § 5390; Mar. 4, 1909, c. 321, § 146, 35 Stat. 1114.)"

center of the business section of said city, fronting on a hard-surfaced highway leading through said city to the west from the rough, timbered and sparsely settled country to its north and east. Several government witnesses were using said highway from October 1, 1936 to December 20, 1937, embraced within the period covered in the indictment as to the conspiracy, for the purpose of transporting non-tax paid whiskey in large quantities to the west into various sections of the state of Oklahoma, and in doing so it was necessary to pass directly through the city of Hugo where a number of the defendants, most of whom being appellants herein, were officers, or undergo inconvenience as well as danger of arrest by federal officers in detouring said city.

The effect in substance of the evidence on the part of the government is that appellants Mobley, Steen, Sayles and Rorie, not being officers at the time charged, participated in the conspiracy to their advantage or profit or to the profit of others in transportation or sale or both of the non-tax paid whiskey, in which the government witnesses Dick Driggers, William I. Cox, William A. Cotton, and Roy Denmark and others, were engaged on a large scale. The evidence on the part of the government of Dick Driggers, William I. Cox, Geraldine Cox, William A. Cotton, Roy Denmark, Hobson Denmark, Ernest Shaw, Donald Rountree, and Jack Eddleman disclosed that the conspiracy existed beginning with the fall of 1936 and continuing to December 20, 1937.

Burl Sayles, convicted under said charge, no appeal being prosecuted, resided about 16 miles north and east of said city, and was engaged in the manufacture of moonshine (non-tax paid) whiskey, and as a party to said conspiracy sold and supplied same to the parties thereto as herein indicated.

Mobley, Bearden, Hall, Rorie and Steen, defendants, were identified by said Driggers as parties to and participants in the conspiracy. Driggers testified that all of said parties other than Mobley sold and transported and delivered to him non-tax paid whiskey at said city of Hugo, and in effect that Mobley brought him into the conspiracy.

 The contention made is that the evidence is insufficient to connect Mobley or Steen with the conspiracy charged in count 1. Evidence of Driggers connects each one of them. Driggers identified Mobley and Steen in their activities, giving in detail acts and conversations between Mobley and him, who had previously been convicted of an offense involving the internal revenue act, resulting in contacts immediately with Hall and Bearden by Driggers, thereby leading to purchase of non-tax paid whiskey by him from them in the city of Hugo and his not going out for it in the "sticks" where non-tax paid (moonshine) whiskey was manufactured for illicit sale. His evidence presents the issue as to Mobley participating and aiding therein, though denied by Mobley, supported by evidence as to good character arising since his conviction in 1934, the determination of the issue being for the jury. The same acts that were set in motion with Hall and Bearden by Mobley also led to contact of Driggers with Steen, through instrumentality of Hall and Bearden, and also to the procuring of non-tax paid whiskey in the city of Hugo from Steen. Driggers not only identified Steen but also described in detail the car driven by him, no effort being made by the defense in any way during the trial to show that Steen did not drive such car. On government's theory, which is supported by the evidence of Driggers, William I. Cox, and Geraldine Cox, his wife, Shaw, Cotton, Rountree, and the two Denmarks, and Eddleman, this course of cooperation and conjunction as arranged on the part of Mobley reached not only through officers Bearden and Hall, but also through Lindley, chief of police. Whilst the evidence as to Lindley rests more on circumstances, it was sufficient for the issue that he was a participant and party to the conspiracy to be submitted to the jury. The only question for the court on review is as to whether the facts as found by the jury operate as substantial proof of guilt.

The evidence by Driggers, William I. Cox, Ernest Shaw, William A. Cotton, and the two Denmarks, on the part of the government, if believed by the jury, and by its verdict it was so believed, proved that Mobley, Bearden and Hall were working in conjunction in violating the internal revenue laws of the United States in the possession and transportation of whiskey on which the tax had not been paid, and that Hall, Bearden and Steen delivered such whiskey to Driggers, and that Bearden and Rorie on another occasion delivered such non-tax paid whiskey to Driggers, and at another time to Cox, and that Bearden permitted for a consideration under terms of an oral agreement made by him with Cox,

providing for said Cox to transport a load of whiskey on which tax had not been paid in an automboile through the city of Hugo, and that said Bearden was not to arrest him or inform against him for such transportation, it being the duty then and there of said Bearden as an officer not only to inform against him but also to arrest said Cox therefor, and further, that Burl Sayles gave to Cox the sum of $10 in money with instructions to deliver the same to Oscar Bearden as payment for the permission which Bearden as such officer was giving defendant Sayles as to immunity in the hauling of non-tax paid whiskey through said city, same being delivered by said Cox to Bearden, telling him at time of delivery that the money was sent to him by Burl Sayles, and also that Oscar Bearden accompanied said William I. Cox to the premises of Howard Rorie located on U. S. Highway 70, where said Rorie was then operating a cabin camp west of the city of Hugo in Choctaw County, the said Cox then and there arranging to buy and did receive from said Rorie at the time cases of non-tax paid whiskey, and the said Burl Sayles on another occasion sold and delivered to William I. Cox cases of non-tax paid whiskey, for which Cox paid Sayles at the rate of $7 a case, and on or about December 15, 1937 James H. Lindley, chief of police at Hugo, and Oscar Bearden, constable, arrested one William A. Cotton for having in his possession near the city of Hugo 12 cases of whiskey, non-tax paid, and took from his person a certain sum of money, consisting of silver dollars and currency of the aggregate amount of about $70, and that said Lindley then and there kept said whiskey and money and on the next day told him "to get out of town before the federals found out about this as they might arrest him," and gave said Cotton the sum of $5 with which to buy gasoline in leaving said city.

It was proved that Driggers had been theretofore convicted of violating the internal revenue laws, sentenced to serve a term of 18 months, and on another charge, character of the latter offense and punishment assessed not disclosed, and that William I. Cox theretofore had been convicted of a felony (kind not disclosed in the evidence) and served a term in a penitentiary, and that when a boy he had been sent to an industrial or reform school. Cox was supported in his testimony by his wife, Geraldine Cox, there being nothing in the record to indicate that she was ever convicted of any crime nor is her reputation in any way assailed in the evidence, other than by the fact that she had accompanied her husband on two occasions when he had gone to or through Hugo for the purpose of procuring whiskey.

The evidence of Ernest Shaw also supports the government's theory, Shaw at that time serving a sentence in a penitentiary for robbery and had been convicted of another offense, the record not disclosing the kind or punishment.

Roy Denmark and Hobson Denmark also testified on part of the government in support of the charges, each having been convicted and served a sentence for violating the internal revenue laws.

Steen and Sayles did not take the witness stand. All other defendants testified in their own behalf, specifically denying guilt.

Pat Reddick, at that time chief of police at Rogers, Arkansas, having been such for 13 years, testified as to the reputation for truth and veracity of Cotton and also as to that of Shaw, in the community in which they had lived at Rogers, as being bad, but further stated that he had not seen them around Rogers for five or six years. Also Walter Dean, an officer at Rogers, Arkansas, testified to the same effect, and that he had not seen either one of them around Rogers, Arkansas, for five or six years.

Geraldine Cox, the wife of William I. Cox, in some respects corroborated the evidence of her husband, and especially in that she said she saw him hand Bearden, who has not prosecuted an appeal, something at Rountree's filling station west of the city of Hugo.

Appellants insist that no substantial proof of guilt was made, citing Moore v. United States, 10 Cir., 56 F.2d 794, and Towbin v. United States, 10 Cir., 93 F.2d 861. The questions there were not as to credibility or weight of the evidence, but rather as to the effect of what was proved, whether it operated as substantial proof as to guilt.

In Wilder v. United States, 10 Cir., 100 F.2d 177, there was no evidence whatever as to non-tax paid whiskey. In the instant case only non-tax paid whiskey is involved. All whiskey that was transported, purchased or possessed, according to the evidence, was whiskey upon which the tax had not been paid. Under the ruling in the Wilder case the judgments of the lower court here challenged by appellants are supported.

In May or June, 1937 when Bearden permitted Cox to take through Hugo a load of whiskey upon which the tax had not been paid, James H. Lindley was in the car with said Bearden, according to Cox, who said, "Bearden stopped me on the highway and said 'Well, I will have to look over your car.' It was getting pretty dark. I didn't know for sure it was Oscar (Bearden). When he started to get in I saw who it was and I said 'Is your name Oscar Bearden?' and he said 'Yes', and I said 'This whiskey is supposed to go through here,' and he says 'Why in the hell didn't you say so in the first place and not cause all this excitement. Take it and get out.'" Cox testified that the party with him (Bearden) was the defendant Lindley. Cox further testified that at another time in the first part of December, 1937, he asked Bearden where he could get some whiskey, who said he didn't know, and then "we walked on down to the police station. He went in and came out, there being a party with him that he said was the chief, (witness here pointing out and identifying the defendant Lindley)." He further stated: "We drove on down to Rorie's place where he had a tourist camp, who was living in a little white house. Bearden knocked on the window and Rorie got up and came out and said he had it. I then got my pickup and loaded up 16 or 17 cases and two five-gallon kegs."

On cross examination Cox stated that in the early part of December, 1937 the chief Lindley was with Bearden, pointing out and identifying Lindley, and that witness got the whiskey at Rorie's tourist camp, and in same cross examination he repeated the evidence about Bearden accosting him in May or June, 1937 on the highway to look over his car when it was pretty dark, and when he saw that it was Cox, Bearden stated, "Why in the hell didn't you say so in the first place and not cause all this excitement. Take it and get out." Witness then in the same cross examination repeated his evidence that someone was with Bearden and he identified the defendant Lindley as being the man with Bearden, and stated in effect that prior to that time he was not acquainted with Lindley.

Roy Denmark testified as to buying non-tax paid whiskey from Hall about 10 o'clock at night, lights being on, at the police station in the latter part of November or in December, 1937. The record in another place is more specific that it was in December but before December 20, 1937, and that said non-tax paid whiskey was in wet paper boxes or cartons, dry paper boxes being substituted at the time of the purchase and before delivery. Denmark described specifically in detail the interior and stated he had never before been in that jail. No effort was made by the defendants in any way to show that Denmark had ever before been in the jail or that he had not correctly described the interior of the jail.

Both Cotton and Shaw identified Lindley as one of the officers who arrested them on the outside of the city limits and took them to the city jail, both stating that at the time of the arrest and delivery to the city jail it was raining.

Lindley denied that he took part in the arrest, but stated that he was in the police station when Cotton and Shaw were brought there, but denied that he got any of the money, claiming that Oscar Bearden took the money from them. Lindley stated that after he had them finger printed they were then locked up, and that one of the prisoners who gave his name as Self afterwards admitted that he was Shaw and an escaped convict, and he learned that Cotton was not a fugitive and that he called the officer (sheriff) next day and released Shaw to him; that it was raining hard the night of their arrest and Cotton's car was standing on the west side of the building and that he (Lindley) drove the car around to a place to park cars between the clerk's office and his office and got a tire tool and pried the back-end up and got the whiskey out and carried it into the jail and afterwards went home, and that between 8 and 9 o'clock the next morning Lindley stated that he and Bearden poured the whiskey out, and that "I called Leo Rice, councilman, as the mayor was out of town. I turned Cotton loose. He (Cotton) said Bearden had his money, $40.00 or $41.00 and he would let that stand as bond. I called the mayor and then got Mr. Rice and made that arrangement." Lindley further stated that the arrest report, 142–A, showed Cotton was arrested at 8 P. M., and arrests are entered in the books in the order that the prisoners are taken into custody, and whoever arrests the man is supposed to put his name down as the arresting officer, and when the money is turned over to the mayor, the court docket number is put on the slip. Lindley further stated, "I never had my hands on this money at all. The entries on the docket book relative to W. A. Cotton are in Carl Sager's handwriting (then the

mayor). I was not present when he made these entries. Don't know why it appears out of order in this book. * * * Mr. Bearden turned the money over to the mayor about five o'clock the 17th day of December, 1937. I never had any agreement with any of these defendants or any other officer to let people transport whiskey through Hugo. * * * When Cotton was released, he asked me if his fine was done with. I told him so far as the city was concerned it was, but the county or federal could get him, and if he kept on handling 'cat' whiskey, they would get him."

On cross examination, he stated he did not assess any fine against Shaw, releasing him to the county; that Cotton was fined for possession of whiskey, and he knew he was picked up outside the city limits of Hugo, and didn't know where the whiskey was seized, and that he wasn't out there, and didn't turn him over to the county officers for prosecution and didn't turn him over to the federal officers, and didn't fine him $39, and that Cotton put up a bond of $40.60, and that they gave it to the mayor, who kept it and put the case on the docket, and couldn't explain why the entry was not made in the regular order, and knew those entries were in the mayor's handwriting, and none of the entries in the docket book were made by him, and some of them were not in the mayor's handwriting, and that the whiskey was destroyed before the mayor ordered it, and didn't remember whether the mayor ever ordered it or not, and didn't know whether his (Cotton's) pocketbook was kept or not, and gave Cotton his car keys which were in the locker, and didn't find them that night, but found them there and gave them to him the next morning, and that he stayed at the police station for awhile after releasing Cotton, and did not go over to the produce house and didn't meet Cotton over there, that he received $100 per month as pay from the police department, and the first month he thinks it was eighty dollars and something, and he thinks he had $2,900 and some odd dollars in postal savings, in the spring of 1937 having deposited $2,500, the other $400 being in his wife's name; after (becoming chief of police) that he had a profit-sharing agreement with the young man who operated the produce business.

Neither the councilman Rice nor the mayor Sager was called as a witness by any defendant, nor any showing made as to why either or both of them had not been introduced as witnesses, or that any effort had been made to procure such attendance. Neither was the arrest report 142-A introduced in evidence so it could be inspected nor any effort made to show who signed same.

The deputy city clerk, Eddleman, as a witness for the government, testified that he didn't know who made the entry on the docket but that it was neither in his nor the city clerk's handwriting, but as a rule such entries were made by either the clerk or the deputy. No other evidence was introduced as to the Cotton entry on the docket book to explain why the entry was made out of regular order.

Reasor Cain on part of defendants testified that he was in the police station on December 17, 1937, saw Chief of Police Lindley there and some empty fruit jars and smelled the odor of whiskey, and that whilst there the prisoner Shaw was turned over to the sheriff and transferred to the county jail, and that Cotton came out and left, going directly across the street to a car; that he didn't know how many fruit jars that he saw there and didn't count them, wasn't interested in the whiskey and didn't notice particularly, and didn't see anybody pour out any whiskey.

Complaint is made that Mobley was convicted only on count 1 (conspiracy charge), and acquitted on count 2, charging Mobley, Bearden and Hall with possessing non-tax paid whiskey at said filling station, and count 3, charging the same parties with concealing and aiding in the concealment of such whiskey at said filling station removed from a distillery without such tax having been paid. The evidence of Driggers as to the action and participation of Mobley in contacting Hall and Bearden in the sale and transportation of non-tax paid whiskey was that such action was repeated on more than one occasion during November, 1936, and with others in 1937, in which Hall and Bearden or one of them delivered non-tax paid whiskey to Driggers by taking his car and leaving and then shortly returning and bringing it loaded with such non-tax paid whiskey to the filling station or to the Webb Hotel a block to the west on the same highway or street, or other points, and that then Bearden would take Driggers out to the edge of town and after receiving pay therefor allow Driggers to go on his way to the west. If believed by the jury, the evidence as to acts and statements by Mobley, Bearden and Hall acting in concert there-

with, was substantial to prove that Mobley aided and participated in the alleged conspiracy.

In Corpus Juris, Vol. 16, page 280, Section 475, it is said: "Where a conspiracy to commit a crime is a substantive offense, as is generally the case, neither an acquittal nor a conviction of a conspiracy to commit a crime is a bar to a prosecution for the commission of that crime, or for aiding and abetting another to commit it. For the same reason an acquittal or a conviction of a particular crime is no bar to a subsequent indictment for a conspiracy to commit the same. A fortiori a prosecution for conspiring to commit a crime is no bar to a prosecution for the commission of a distinct offense."

In United States v. Rabinowich, 238 U.S. 78, 35 S.Ct. 682, 683, 59 L.Ed. 1211, it is said:

"It * * * had been repeatedly declared in decisions of this court, that a conspiracy to commit a crime is a different offense from the crime that is the object of the conspiracy. Callan v. Wilson, 127 U.S. 540, 555, 8 S.Ct. 1301, 32 L.Ed. 223, 288; Clune v. United States, 159 U.S. 590, 595, 16 S.Ct. 125, 40 L.Ed. 269, 271; Williamson v. United States, 207 U.S. 425, 447, 28 S.Ct. 163, 52 L.Ed. 278, 290; United States v. Stevenson, 215 U.S. 200, 203, 30 S.Ct. 37, 54 L.Ed. 157, 158. And see Burton v. United States, 202 U.S. 344, 377, 26 S.Ct. 688, 50 L.Ed. 1057, 1069, 6 Ann.Cas. 362; Morgan v. Devine, No. 685, decided this day (237 U.S. 632, 59 L.Ed. [1153], 35 S.Ct. 712). * * *

"There must be an overt act; but this need not be of itself a criminal act; still less need it constitute the very crime that is the object of the conspiracy. United States v. Holte, 236 U.S. 140, 144, 35 S.Ct. 271, 59 L.Ed. [504] [L.R.A.1915D, 281]; Joplin Mercantile Co. v. United States, 236 U.S. 531, 535, 536, 35 S.Ct. 291, 59 L.Ed. [705]. Nor need it appear that all the conspirators joined in the overt act. Bannon v. United States, 156 U.S. 464, 468, 15 S.Ct. 467, 39 L.Ed. 494, 496, 9 Am.Crim.Rep. 338. A person may be guilty of conspiring, although incapable of committing the objective offense. Williamson v. United States, and United States v. Holte, supra. And a single conspiracy might have for its object the violation of two or more of the criminal laws, the substantive offenses having, perhaps, different periods of limitation. (See Joplin Mercantile Co. v. United States [supra])."

See, also Tramp v. United States, 8 Cir., 86 F.2d 82; Williams v. United States, 6 Cir., 3 F.2d 933.

■■ The particular manner or means by which the overt act may be done is immaterial, nor is it necessary that all conspirators join in the overt act or in every one of the several overt acts of the conspiracy. A person may be a party to and subject to conviction without committing an overt act, such other party thereto pursuant to the conspiracy and its purpose being expressly or impliedly authorized to do such overt act, and the substantive crime when charged as an overt act may not necessarily be a part of the conspiracy. 15 Corpus Juris Secundum, Conspiracy, § 43, pp. 1068, 1069, and authorities cited under footnotes 82 and 89.

In United States v. Anderson et al., 7 Cir., 101 F.2d 325, it is stated:

"The breadth of conspiracy is not limited by effective limitations of overt act committed by one of conspirators, and, if one participates in conspiracy, it is immaterial that he has committed no overt act. * * *.

"A perusal of this record convinces us that there was substantial evidence from which the jury was warranted in concluding that each appellant was a party to, and knowingly participated in the conspiracy. Much is said by appellants about incredible witnesses and untrustworthy evidence, but counsel must know that with these questions we are not permitted to concern ourselves."

In Wolf et al. v. United States, 7 Cir., 283 F. 885, 888, the question of the court's denial of a motion to direct a verdict in favor of defendant being considered, it is said that counsel "vigorously and bitterly attacked the government's witnesses, particularly those who were described as accomplices, overlooking the distinction between credibility and competency. The testimony of an accomplice may be attacked before the jury as incredible and unworthy of belief and prompted by unworthy motives; yet it is still competent, and may, standing alone, support a conviction."

■ The rule is that conviction may rest upon the uncorroborated testimony of an accomplice. Caminetti v. United States, 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442, L. R.A.1917F, 502, Ann.Cas.1917B, 1168; Gra-

boyes v. United States (Fischer v. United States), 3 Cir., 250 F. 793; Ray v. United States, 6 Cir., 265 F. 257; Kelly et al. v. United States, 6 Cir., 258 F. 392; Reeder v. United States, 8 Cir., 262 F. 36; Block v. United States, 8 Cir., 267 F. 524, 526; Hollis v. United States, 5 Cir., 246 F. 832; Freed v. United States, 49 App.D.C. 392, 266 F. 1012; Arnold v. United States, 10 Cir., 94 F.2d 499; Nibblelink v. United States, 6 Cir., 73 F.2d 677.

As to credibility and weight of evidence, one convicted of a felony is somewhat in the situation of an accomplice.

In Marino v. United States, 9 Cir., 91 F. 2d 691, 699, 113 A.L.R. 975, it is said: "* * * the court made the statement that, 'A person convicted of crime is in somewhat the situation of the accomplice.' Complaint is made of the quoted statement. Considering the complete instruction we believe it is apparent that a convicted person 'is in somewhat the situation of an accomplice,' in that the jury should examine such testimony with caution and disregard it unless it produced in the minds of the jury a positive conviction of its truth."

Complaint as to the instructions of the court is as to denial of motions for directed verdicts.

Defendants Mobley, Bearden and Hall were charged with substantive offenses in the second and third counts, of which Mobley was acquitted and Hall and Bearden convicted. It was not necessary for Mobley to have committed an overt act if he was a party to the conspiracy, provided another party or parties thereto in furtherance of the conspiracy committed an overt act. Under the verdict returned by the jury, not only were Bearden and Hall parties to the conspiracy but they also committed an overt act. This would bind Mobley if he was a party to the conspiracy. The jury found that he was.

Steen was convicted of substantive offenses as charged in counts 4 and 5, neither of which is charged as an overt act. He was also convicted under the first count (conspiracy charge). The fourth count as to Steen's possession of non-tax paid whiskey, and the fifth count as to Steen's unlawful possession thereof, though the evidence were not sufficient to sustain a conviction as to Steen under count 1 (the conspiracy charge), still the jury having convicted him on said counts charging substantive offenses as well as count 1 charging a conspiracy, and the court having imposed thereon the same sentence against him as to each count to run concurrently, it would not be essential to determine whether a reversal should be had under count 1.

In United States v. Twentieth Century Bus Operators, Inc., et al., 2 Cir., 101 F.2d 700, 702, it is said: "It may be further noted that reversal on the conspiracy count would not diminish the sentences imposed upon the individual appellants, since the imprisonment to which they were sentenced was the same term on each of the three counts to run concurrently."

The third overt act as to Steen was that he and Mobley delivered to Driggers 15 cases of whiskey on which the tax had not been paid. The fourth is that Bearden and Rorie delivered to Driggers 15 cases of non-tax paid whiskey, and the fifth that Bearden, a constable in said city, permitted and allowed Cox under the terms of an oral agreement between the said Bearden as constable and said Cox to the effect that he would be permitted and allowed to transport a load of non-tax paid whiskey in an automobile through said city in said county without said Cox being arrested or informed against by the said Bearden as to such transportation of such whiskey, when it was then and there the duty of Bearden as an officer to arrest him and to inform against him. The sixth overt act that the defendant Sayles gave William I. Cox $10 with instructions to deliver same to Bearden as part payment for permission which defendant Bearden as an officer was allowing Sayles to haul non-tax paid whiskey through the city of Hugo, and that said money was delivered by Cox to Bearden with information that it had been so sent by Sayles; the seventh that Bearden accompanied Cox to premises of Rorie on U. S. Highway No. 70 where Rorie was operating a cabin camp west of the City of Hugo, and that Cox arranged to buy and receive from possession of Rorie at that time 17 cases of non-tax paid whiskey for which he paid Rorie the sum of $8 per case; and eighth that Burl Sayles at his farm northeast of Hugo sold to Cox 42 cases of non-tax paid whiskey for which Cox paid Sayles $7 per case. Ninth overt act is that Lindley, chief of police, and Bearden, constable, arrested Cotton for having in his possession 12 cases of non-tax paid whiskey, and seized from him the sum of $70, consisting of silver dollars and currency, and that Lindley at said time and place kept said

**984**

money, telling him "to get out of town before the federals find out this as they might arrest you", and gave Cotton the sum of $5 to use in making said escape from said city.

An overt act alone is insufficient to constitute a conspiracy. There must be an unlawful agreement to which the overt act is referable. The overt act must be a subsequent independent act following the conspiracy and done to carry into effect the object thereof, and cannot succeed the completion of the contemplated crime. The overt act must reach far enough toward the accomplishment of the desired result to at least amount to the commencement of the consummation, and if the act of a conspirator be done with the purpose of putting the unlawful agreement into effect, it is sufficient although it has no tendency to accomplish its object. The conspiracy is complete on the forming of the criminal agreement, and the performance of at least one overt act in furtherance thereof, and if several overt acts are charged it will be sufficient to show that one or more of those acts were committed in furtherance of the conspiracy. 15 Corpus Juris Secundum, Conspiracy, § 43, pp. 1068, 1069.

The evidence as weighed and believed by the jury, finding each defendant guilty beyond a reasonable doubt, operated as substantial proof of guilt.

The judgment of the lower court against each appellant is affirmed.