**UNITED STATES v. McGEE et al.**

**Cr. No. 6118.**

United States District Court,
D. Wyoming.

Dec. 31, 1952.

J. J. Hickey, U. S. Atty., of Cheyenne, Wyo., and Oliver O. Dibble, Sp. Asst. to the Atty. Gen., for plaintiff.

R. G. Diefenderfer, of Sheridan, Wyo., for defendant Fred F. McGee, and J. D. Fitzstephens, of Cody, Wyo., for defendant Ernest J. Goppert.

KENNEDY, District Judge.

The above entitled cause is before the Court upon separate identical motions of the defendants for judgments of acquittal.

The defendants were indicted under Title 18, U.S.C. § 371, for a conspiracy to defraud the United States. The pertinent portion of this section reads as follows:

"§ 371. Conspiracy to commit offense or to defraud United States

"If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both."

The indictment is in the following language:

"The grand jury charges:

"On or about and between the 22nd day of January, 1948 and the 17th day of November, 1950, both dates being inclusive and approximate, in the District of Wyoming, Fred F. McGee and Ernest J. Goppert did then and there conspire with each other and divers other persons unknown to this grand jury to defraud the United States of America and an agency thereof, to-wit: The Reconstruction Finance Corporation by aiding and abetting Alford F. Leggett and Motor Sales Company in procuring from the Reconstruction Finance Corporation loans contrary to the provisions of the Act creating said agency and the regulations of said agency, for the purpose of personal gain of themselves and secreting from the Reconstruction Finance Corporation the true financial condition of the Motor Sales Company and Alford F. Leggett, and in furtherance of said conspiracy removing collateral previously pledged as security to support the loan made by the Reconstruction Finance Corporation contrary to the provisions of Title 18 USC Section 371."

A brief history of the case up to the present time would seem to make more illuminating the points to be considered upon the motions. Motions were first interposed to the indictment on the ground of its insufficiency and overruled. Thereafter the case was set for trial at Sheridan, Wyoming, at the August 1952 Term and motions for directed verdicts were interposed at the close of the government's evidence and again at the conclusion of all the evidence in the case but were not argued to the Court. In this respect the Court overruled the first motions as it was not apparent on the face of the indictment as to how the alleged overt act would be tied in to the conspiracy charge and the

latter motions were overruled because, as the case had then been presented to the jury, it would seem proper practice to submit the questions of fact to them under appropriate instructions and give them an opportunity to consider the same, realizing that the Court had power and authority at all times to rectify any technical or crucial errors of law which had presented themselves in the case. As a matter of fact, after the jury had been given full opportunity for consideration of the case they returned with a report that they were unable to agree and were thereupon discharged.

The defendants subsequently filed amended motions for judgments of acquittal upon two grounds. Inasmuch as it was inconvenient for both the Court and counsel to devote sufficient time to hear oral arguments thereon it was agreed that the same might be submitted through trial briefs on behalf of the parties within a time fixed by the Court. These briefs have been submitted and are now before the Court for consideration.

The first challenge of the defendants to the indictment under the evidence in the case is in substance that the alleged overt act in the indictment was one which occurred long after the alleged conspiracy with which the defendants were charged had been completed and the second challenge is that the evidence at the trial was insufficient to justify a finding that the defendants were guilty of the offense charged beyond a reasonable doubt.

The trial was of considerable length, extending over a period of six days, and the evidence taken was voluminous, although it has since been transcribed and submitted to counsel for use in the preparation of their briefs.

It will be noted in the first instance that the indictment is based upon one solitary overt act, towit: "in furtherance of said conspiracy, removing collateral previously pledged as security to support the loan made by the Reconstruction Finance Corporation". Undoubtedly it would have been possible for the framers of the indictment to have alleged other overt acts other than the single one chosen. For example, the letters written by one or the other of the defendants, or both, as to the financial condition of Leggett or his company, Motor Sales Company, for which the loan was secured, or the action of the defendants in loaning money from private organizations over which they had control to the bank in which they were officials for the purpose of representing that Leggett had no unliquidated bank loans in order to make him eligible for an R.F.C. loan. These are merely cited as examples which as shown by the evidence were actions taken by the defendants in connection with procuring the loans and preceding the time when they were actually granted by the R.F.C. By this it is not inferred that they would have been sufficient as overt acts to sustain in fact the charge of conspiracy as they may have been analyzed and considered as ordinary transactions devoid of any intent to deceive or defraud the United States. In any event they are used here only to illustrate more distinctly the proposition which is presented to the Court, in that they occurred before the loans were granted, while the overt act charged occured after those loans were granted.

The evidence upon the trial showed that there were two loans granted the Motor Sales Company, which was substantially owned and operated by Leggett and which were fully consummated and totally disbursed on or before May 1, 1950, while the alleged removal of the collateral pledged as security to support the loan took place on or about October 24, 1950. Whatever may be said about the removal of the alleged securities, which were in the nature of notes and accounts receivable owing to the Motor Sales Company, and which had been pledged to the Reconstruction Finance Corporation as additional security for the second loan, there still may remain a question as to who may be the true owner in law of these notes and accounts receivable, which question manifestly cannot be litigated here and which has no particular pertinency to a decision in this criminal case.

█ It is recognized law which needs the citation of no authorities to say that it has been repeatedly held that at least one of the alleged overt acts committed for the

purpose of carrying this conspiracy into effect must be proved beyond a reasonable doubt the same as the conspiracy itself before a conviction in a criminal case may be had. In other words, while the conspiracy itself is the gist of the crime it must be supported by competent proof of at least one of the alleged overt acts. The single alleged overt act set forth in the indictment must therefore be sufficient in law to sustain the conspiracy and must be likewise proven as an overt act in fact.

We are therefore confronted with a situation where it appears from the evidence in the case that the alleged removal of the securities by the defendants occurred at least five months after the loans were completed and the money thereon disbursed by the co-conspirators, Leggett and the Motor Sales Company. The alleged overt act is not tied into the alleged conspiracy. In other words, there is nothing in the record to justify a finding that the subsequent removal of the pledged securities was a component part of any conspiracy in the attempt to procure the loans. Therefore we have before us a situation in which it is charged as an overt act that something was done by the alleged conspirators occurring some time later than the matter of procuring the loans and is the sole basis for supporting the conspiracy with an alleged overt act.

■ The courts have repeatedly spoken upon this subject under varied circumstances, oftentimes in the matter of determining whether or not the statute of limitations had run, together with conditions, but through them runs the thread by which the Court is able to follow the principle laid down and generally enunciated. In Ex parte Black, D.C.E.D.Wis., 147 F. 832, at page 840, it is said:

"An overt act presupposes a pending conspiracy. So that the act of any one done in furtherance of the conspiracy, may bind all of his associates. When a conspiracy has been completely effected, this implied agency disappears. * * * It is a contradiction of terms to speak of an act done to effect the purpose of the conspiracy after the conspiracy has been accomplished."

This case was subsequently sustained by the Circuit Court of Appeals.

In the case of Lonabaugh v. United States, 8 Cir., 179 F. 476, at page 481 it is said:

"* * * we think it also is plain that the object of the conspiracy was effected when the title passed from the United States, and, therefore, that what was done thereafter was not done to effect that object."

In United States v. Ehrgott, C.C.S.D. N.Y., 182 F. 267, at page 273 it is said:

"The defendants are clearly right in saying that the overt act cannot succeed the completion of the contemplated crime, and here the crime contemplated would have been completed as soon as the goods once got clear of the warehouse in Brooklyn, if I am right about the scope of section 2987."

In DeLuca v. United States, 2 Cir., 299 F. 741, at page 745 it is said:

"No act can further the conspiracy which transpires after the end of the conspiracy."

In Wilson v. United States, 2 Cir., 275 F. 307, at page 314 it is said:

"We concede that an overt act cannot succeed the completion of the crime contemplated."

The above cited cases are the older ones in judicial literature but the same rule seems to prevail in the later cases. In Rose v. St. Clair, D.C.Va., 1928, 28 F.2d 189, it is said at page 191:

"When the object of a conspiracy has been fully accomplished, no act subsequently done can possibly be an act done to effect the object of the conspiracy."

And still later, in our own Tenth Circuit, in Hall v. United States, 10 Cir., 1940, 109 F.2d 976, at page 984 the Court says:

"An overt act alone is insufficient to constitute a conspiracy. There must be an unlawful agreement to which the overt act is referable. The overt act must be a subsequent independent act following the conspiracy and done to carry into effect the object thereof,

and cannot succeed the completion of the contemplated crime.".

With this wealth of authority applied to the facts in the case at bar, as this Court understands them, and has attempted to apply them here after hearing the evidence in the case, it is difficult to conceive how a conviction upon the indictment as it now stands could be permitted to stand.

Counsel for the government in their brief set forth a contention which is illustrated by an excerpt on page four, reading as follows:

"It is submitted that the overt act alleged was a necessary means of accomplishing completely the object of the conspiracy, the defraudation of the government, a conspiracy being presumed to continue until the contrary is shown."

I know of no way that an indictment under this particular section, which is specific in the matter of charging a conspiracy with one or more specific overt acts to carry it into effect can be converted into a general charge of *defraudation* of the government. Even though it be assumed that a conspiracy is presumed to continue until the contrary is shown such a principle would not be applicable to the facts in the case at bar because they show that in the matter of conspiring with Leggett and the Motor Sales Company to secure the loan from the R.F.C., the end of that transaction came with the procuring of the loan and therefore the alleged conspiracy was complete with the accomplishment of its purpose.

In the view which this Court takes of the sufficiency of the indictment under the proofs presented in the trial of the case it would seem unnecessary to discuss the insufficiency of the evidence to sustain the charge as it would have little importance in the face of an indictment which cannot be sustained.

For the reasons stated, the separate motions of the defendants for a judgment of acquittal will be sustained and an appropriate judgment to that effect will be entered, discharging the defendants and their bondsmen.