**UNITED STATES of America, Appellee,**

v.

**Mervin Jarvis CHERRY, Appellant.**

**No. 8355.**

United States Court of Appeals Fourth Circuit.

Argued Oct. 4, 1961.

Decided Nov. 6, 1961.

LeRoy Scott, Washington, N. C. (Charles P. Green, Raleigh, N. C., on brief), for appellant.

Lafayette Williams, U. S. Atty., Greensboro, N. C. (Abner Alexander, Asst. U. S. Atty., Winston-Salem, N. C., on brief), for appellee.

Before SOPER and BRYAN, Circuit Judges, and MICHIE, District Judge.

MICHIE, District Judge.

Mervin Jarvis Cherry was indicted in the Middle District of North Carolina on a charge of being a party to a conspiracy to violate the Internal Revenue Laws of the United States relating to distilled spirits. He was convicted and sentenced to serve five years of which six months was to be an active sentence, the remainder to be served on probation.

There were twelve other defendants all of whom were convicted or pleaded guilty. The existence of a conspiracy to violate the Internal Revenue Laws relating to distilled liquor was proved up to the hilt and by this appeal the defendant Cherry does not undertake to contend that there was no such conspiracy. He contends first, that he had nothing whatsoever to do with the matter, the evidence against him being based on a mistake of identity, and second, that even if he did the things which one witness, mistaking someone else for him, testified he did, still those things did not prove that he was a party to the conspiracy.

The facts proved with respect to the man who is alleged to have been Cherry can be briefly stated. A government agent, Athan M. Brown, who had accepted work with some of the conspirators, brought a load of sugar to the home of Johnny Richard Davenport and James Henry Davenport who were tenants on a

farm owned by the defendant Cherry. The road to the still which was subsequently discovered ran from the Davenports' home across the Cherry property to the still. The Davenports were admittedly parties to the conspiracy. A man who was unknown to Agent Brown at the time was present at the Davenports' on the occasion in question and helped to unload the sugar, after first moving some whiskey to make room for the sugar. The man later identified by Agent Brown as Cherry but who was unknown to Agent Brown at the time counted the sugar and said that it was short and further said: "This isn't the first time we have been short." He also said: "Another time you brought 6100 pounds in here, and when we counted it, there was only 6000 pounds."

At some later time the agent was shown a photograph of the defendant Cherry and identified him as the man, then unknown to him, who had helped unload the sugar and made the remark about the shortage. And then at the trial, with Cherry seated in the courtroom, he again definitely identified him as the man whom he had seen on the occasion above referred to and who helped unload the sugar and made the remark about the shortage.

The defendant argues that it was conclusively proved at the trial that there must have been a mistake in identity inasmuch as the defendant was proved to have been in Raleigh at the time or very shortly before the time when Agent Brown stated he saw him at the Davenports' home and further argues that even if he had been the man whom Agent Brown saw at the Davenports' home assisting in unloading the sugar that fact alone would not prove that he was a party to the conspiracy.

As to the question of identity we must concede that Cherry's alibi appears to be a strong one. He and a friend, Shirley Mills, testified that they had gone together to Raleigh on the date in question in the afternoon and had gone to the State Department of Motor Vehicles to have the title of a vehicle trans-ferred. Mrs. Evelyn Boyd, a title examiner for the Department of Motor Vehicles, testified that she remembered the occasion quite distinctly, that it was after her coffee break in the afternoon, that she had waited on one or two other customers before she got to Mr. Cherry and particularly observed him standing in line and that from the fact that it was after her afternoon coffee break and that she had waited on one or two other customers first it must have been an appreciable time after 3:30 p. m. before Cherry could have left her office. Agent Brown testified that it was still light at the time he saw the man he identified as Cherry at the Davenports' home. And we understand that it is conceded that if Cherry was at Mrs. Boyd's office at the time she stated he was there he could not have gotten to his farm at the hour the agent says he saw him there.

The alibi sounds impressive on paper but the court has not had the advantage the jury had in hearing and seeing the witnesses as they testified. The jury could have believed that Mrs. Boyd was mistaken as to the time she served Cherry. Possibly it was after lunch rather than after her coffee break. And the jury could have believed that Cherry and his friend, and even Mrs. Boyd, were lying. Agent Boyd's identification of Cherry by looking at a photograph might be regarded as something less than conclusive but his subsequent identification of him in the courtroom is somewhat stronger. His evidence could be believed by the jury and as above indicated the evidence on behalf of Cherry could be disbelieved. In the face of such conflicting evidence this court cannot substitute its judgment for that of the jury who are the legally constituted triers of fact.

Conceding then that the jury was entitled to believe that Cherry was the man whom Agent Brown saw at the Davenports', has it been shown that he was a party to the conspiracy?

Counsel for Cherry contend that all that has been proved against Cherry is

that he assisted in unloading the sugar after first helping to make room for it by moving some whiskey and they argue that that does not prove that he was a party to the conspiracy. The argument is, in effect, that at most he just happened to be around and gave a helping hand, without being in any other way interested in what was going on.

■ We have no quarrel with the statement of the law as expounded by counsel. There must be a conspiracy and the accused must be a party to it—not merely a person who happened to help in some limited phase without knowing what it was all about.

"On the other hand, an accused must join in the agreement to be guilty of a violation of the statute, for even if he commits an overt act, he does not violate the statute unless he joined in the agreement." Marino v. United States, 9 Cir., 91 F.2d 691, 695, 113 A.L.R. 975.

"It has been said over and over again that the conspiracy, not the overt act, is the 'gist' of the crime." United States v. Cohen, 2 Cir., 145 F.2d 82, 94.

"An overt act alone is insufficient to constitute a conspiracy. There must be an unlawful agreement to which the * * * act is referable." Hall v. United States, 10 Cir., 109 F.2d 976, 984.

■ And we agree that it follows from this principle that one who sells materials with knowledge that they are intended for use in distilling illicit spirits does not thereby become a party to the conspiracy. United States v. Falcone, 311 U.S. 205, 61 S.Ct. 204, 85 L.Ed. 128. And it is contended that the defendant has not been shown to have any knowledge of, or to have been a party to, any conspiracy any more than the man who sold the sugar.

The argument for the defendant might be persuasive if in fact the only evidence connecting him with the conspiracy was the evidence of his assistance in unloading the sugar. But there is more than that. We have adverted before to the fact that the defendant Cherry counted the sugar and claimed it was short. The evidence in full on this point is as follows:

"The Court: Which one of the Davenports did you see when you arrived there?

"The Witness: James Henry Davenport. James Henry Davenport and Mervin Cherry assisted me in unloading this sugar; before we could unload the fifteen hundred pounds of sugar, we would always back into a little shed or lean-to that was built onto the barn so that the car, any activity would be concealed to people driving by on the road, and unload the sugar into the stall; when I arrived there that day, in that stall was some whiskey in cases, some liquor, and some more sugar; and Mervin Cherry, James Henry, and I took this whiskey over to one side to make room for the fifteen hundred pounds of sugar, and Mervin Cherry assisted me with James Henry Davenport in unloading that sugar from my car, the Pontiac, into that barn stall; and Mervin Cherry counted the sugar, and he said there was only fourteen hundred and eighty pounds of the sugar; part of the sugar was in bales; and I counted the sugar, and Jimmie Griffin was there, and he counted the sugar; and it was agreed there was only fourteen hundred and eighty; and Mervin Cherry said this isn't the first time we have been short; he said another time, he said you brought sixty one hundred pounds in here, and when we counted it, there was only six thousand pounds. In other words, that was the second time I had shorted them on the sugar; one time before it was a hundred pounds, and this time it was twenty.

"Griffin made a note of that, and said he would deduct it from the liquor, and add it on to Ralph's bill * * *"

If Cherry had not been a party to the conspiracy but had gone to the place just to see how his tenants were getting along and happened to be there when the sugar arrived and helped to unload it, those facts standing alone probably would be insufficient to show that he was a party to the conspiracy. He might have been an innocent bystander who happened to render a helping hand. But in any such case he would have had no interest in the shortage of the sugar. And he certainly would not have said, "This isn't the first time *we* have been short." (Emphasis supplied.)

This statement shows that Cherry had a personal financial interest in the conspiracy. And the fact that Cherry also stated that he had counted the sugar on a previous occasion when it was short also tends to show that he was not an accidental bystander who happened to lend a helping hand.

We believe therefore that there is sufficient evidence in the record to justify the jury in finding as they did, that Cherry was a party to the conspiracy, and the conviction must therefore be affirmed.

Affirmed.